737 F.2d 717
 NATIONAL ANTI-DRUG COALITION, INC., a not-for-profit
corporation, and Peter Bowen, Plaintiffs-Appellants,
v.
William BOLGER, in his capacity as Postmaster General of the
United States, et al., Defendants-Appellees.
 No. 83-1688.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 12, 1984.
Decided June 26, 1984.
 
 Patrick M. Cummings, Victor F. Ciardelli, Chicago, Ill., for plaintiffs-appellants.
 Marc Richman, Chicago, Ill., for defendants-appellees.
 Before BAUER, WOOD and COFFEY, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, National Anti-Drug Coalition, Inc. and Peter Bowen appeal the decision of the United States District Court for the Northern District of Illinois, granting summary judgment to the defendants-appellees, William Bolger, et al. We affirm.
 
 
 2
 * The National Anti-Drug Coalition, Inc. ("Coalition") is a non-profit corporation organized to provide intellectual and financial support for the achievement of a "drug-free" society. In furtherance of this goal, the Coalition sells educational anti-drug literature and solicits public contributions and memberships. On July 16, 1981, Peter Bowen and two other Coalition volunteers set up a card table outside the Arlington Heights, Illinois, post office for the express purpose of selling literature and soliciting public contributions for the Coalition. Bowen and his co-workers placed their card table on an ingress/egress sidewalk located on United States Postal Service property. Donald Swanson, the Arlington Heights postmaster, informed Bowen that postal regulations prohibited the solicitation of public contributions and the sale of literature on Postal Service property. Following a brief discussion, the Coalition volunteers left the premises.
 
 
 3
 In August 1981, Bowen and the Coalition filed suit in the United States District Court for the Northern District of Illinois, seeking declaratory and injunctive relief against the United States Postal Service. The Coalition alleged that it had made repeated attempts, "since the fall of 1980," to obtain permission from the Postal Service to set up booths at "various postal stations in the Northern Illinois District," to solicit public contributions and sell anti-drug literature.[1] The Postal Service continually refused to grant the Coalition's request because such activity violated 39 C.F.R. Sec. 232.6 which provided:[2]
 
 
 4
 "(a) Applicability. This section applies to all real property under the charge and control of the Postal Service, to all tenant agencies, and to all persons entering in or on such property. This section shall be posted and kept posted at a conspicuous place on all such property.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 (h) Soliciting, Electioneering, Collecting Debts, Vending, and Advertising. Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises are prohibited. This prohibition does not apply to:
 
 
 8
 (a) Commercial activities performed under contract with the Postal Service or pursuant to the provisions of the Randolph-Sheppard Act;
 
 
 9
 (2) Postal notices on bulletin boards as authorized in Sec. 243.2(a) of this chapter;
 
 
 10
 (3) The solicitation of Postal Service and other Federal military and civilian personnel for contributions by recognized agencies as authorized by the Manual on Fund Raising Within the Federal Service, issued by the Chairman of the U.S. Civil Service Commission under Executive Order 10927 of March 13, 1961."
 
 
 11
 In February 1982, the plaintiffs filed a motion for summary judgment, claiming that 39 C.F.R. Sec. 232.6(h), on its face and as applied, violates the Coalition members' rights to free speech under the First Amendment and to equal protection of the laws under the Fifth Amendment. Specifically, the plaintiffs claim that the solicitation of public contributions and the sale of literature are expressions of speech protected by the First Amendment and that Postal Service property constitutes a public forum where this speech may be freely exercised. The plaintiffs contend that 39 C.F.R. Sec. 232.6(h) infringes upon the Coalition members' right to freely express their speech in a public forum because it prohibits the solicitation of public contributions and the sale of literature on postal property. The plaintiffs further contend that the regulation violates the Equal Protection clause of the Fifth Amendment because it prohibits solicitation and the sale of literature on Postal Service property, but does not prohibit the distribution of free literature on the same property.
 
 
 12
 In April 1982, the defendants countered with their own motion for summary judgment, claiming that Postal Service property is not a forum for expressive activity and thus does not constitute a public forum. The defendants contend that 39 C.F.R. Sec. 232.6(h) is reasonable because it prohibits only solicitation on Postal Service property. The regulation does not prohibit distribution of free literature on postal property nor does it prohibit solicitation on the municipal sidewalks surrounding and/or adjacent to such property. Moreover, the plaintiffs claim that because 39 C.F.R. Sec. 232.6(h) prohibits all solicitation on Postal Service property, it does not regulate speech based upon content.[3] According to the defendants' argument, the regulation applies uniformly to all 30,000 postal stations in the United States, its territories and possessions, and prohibits solicitation because it is "the greatest impediment to the normal use of postal facilities."
 
 
 13
 Based upon the parties' briefs and accompanying affidavits, the district court granted the defendants' motion for summary judgment. In its "Memorandum and Order," the district court ruled that the solicitation of public contributions and the sale of literature are expressions of speech protected by the First Amendment. The court proceeded to analyze Postal Service property in terms of the interior post office building and the exterior premises. With regard to the interior building, the court ruled that "post offices are not public forums, and ... the Postal Service had demonstrated [that] solicitation inside post offices interferes with their efficient operation." With regard to the exterior premises, the court did not rule on their public forum status, but did conclude that the "substantial administrative burden" of permitting and regulating solicitation at all of the 30,000 postal stations throughout the United States, its territories and possessions, justifies the Postal Service's ban of public solicitation on its property. The court also ruled that "[t]he regulation distinguishes between activities, and does not discriminate on the basis of content" and thus 39 C.F.R. Sec. 232.6(h) does not violate the plaintiffs' right to equal protection of the laws under the Fifth Amendment. On appeal, the plaintiffs contend that the district court improperly analyzed their First and Fifth Amendment claims.
 
 II
 
 14
 The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech...." It is undisputed that the plaintiffs' solicitation of public contributions and sale of anti-drug literature are expressions of speech protected by the First Amendment. See Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981) ("Heffron "); Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 632-33, 100 S.Ct. 826, 833-34, 63 L.Ed.2d 73 (1980). The First Amendment protection accorded such speech, however, "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron, 452 U.S. at 647, 101 S.Ct. at 2564 (citing Adderley v. Florida, 385 U.S. 39, 47-48, 87 S.Ct. 242, 247-248, 17 L.Ed.2d 149 (1966)). Indeed, the "guarantees of the First Amendment have never meant 'that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.' " Greer v. Spock, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976) (quoting Adderley v. Florida, 385 U.S. at 48, 87 S.Ct. at 247). See also United States v. Grace, --- U.S. ----, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) ("Grace "); U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. 114, 133, 101 S.Ct. 2676, 2687, 69 L.Ed.2d 517 (1981). "[T]he First Amendment does not guarantee access to government property simply because it is owned or controlled by the government." Members of City Council v. Taxpayers for Vincent, --- U.S. ----, 104 S.Ct. 2118, 2134, 80 L.Ed.2d 772 (1984) (quoting U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 129, 101 S.Ct. at 2685). Rather, "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983) ("Perry ").
 
 
 15
 The Court in Perry delineated the three categories of public property that are involved in a First Amendment, freedom of speech analysis. The initial category of property consists of traditional public forums, including "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " 103 S.Ct. at 954-55 (quoting Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.)). See also, Members of City Council v. Taxpayers for Vincent, 104 S.Ct. at 2133. In these traditional public forums the state may "enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry, 103 S.Ct. at 955. See also Grace, 103 S.Ct. at 1707; U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 132, 101 S.Ct. at 2686; Heffron, 452 U.S. at 647-48, 101 S.Ct. at 2563-64. If the state seeks to enforce a content-based regulation, "it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry, 103 S.Ct. at 955. See also Widmar v. Vincent, 454 U.S. 263, 269-70, 102 S.Ct. 269, 274-75, 70 L.Ed.2d 440 (1981). The second category of property delineated in the Perry analysis consists of "public property which the state has opened for use by the public as a place for expressive activity." Perry, 103 S.Ct. at 955. See also Minnesota State Bd. for Com. Colleges v. Knight, --- U.S. ----, 104 S.Ct. 1058, 1064, 79 L.Ed.2d 299 (1984). Examples of such forums include a state university meeting facility generally open for use by registered student organizations, see Widmar v. Vincent, 454 U.S. at 267, 102 S.Ct. at 273; an open school board meeting with direct citizen involvement and public participation, see City of Madison Joint School District v. Wisconsin Public Employment Relations Commission, 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976); and municipal theaters designed for and dedicated to expressive activities, see Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 555, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975). According to the Court in Perry, a state is not required to indefinitely retain the open character of the facility for expressive activity, but "as long as it does so it is bound by the same standards as apply in a traditional public forum." 103 S.Ct. at 955. The third category of property set forth in the Perry analysis consists of "[p]ublic property which is not by tradition or designation a forum for public communication ...." Id. In such a forum the state may impose time, place, and manner regulations, and may also "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public oppose the speaker's view." Id. See also Members of City Council v. Taxpayers for Vincent, 104 S.Ct. at 2134; U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 131 n. 7, 101 S.Ct. at 2686 n. 7. Forums of this nature include a state board of colleges meeting, convened to obtain faculty advice on policy questions, see Minnesota State Bd. for Com. Colleges v. Knight, 104 S.Ct. at 1064; public school mail facilities, see Perry, 103 S.Ct. at 955; a letterbox, see U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 132, 101 S.Ct. at 2686; a military base, see Greer v. Spock, 424 U.S. at 838, 96 S.Ct. at 1218; and advertising space on public transportation, see Lehman v. City of Shaker Heights, 418 U.S. 298, 304, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974).
 
 
 16
 Applying the Perry analysis to the facts in this case, we initially note that 39 C.F.R. Sec. 232.6 prohibits the solicitation of public contributions and the sale of literature on "all real property under the charge and control of the Postal Service." 39 C.F.R. Sec. 232.6(a). This definition of postal property includes the interior of the post office building and any exterior premises under the charge and control of the Postal Service. The parties agree that the municipal sidewalks located on and/or adjacent to Postal Service property are not within the ambit of 39 C.F.R. Sec. 232.6. Accordingly, the facts in this case differ markedly from those in Grace, where a federal statute prohibited, inter alia, display in the Supreme Court building or grounds of any "flag, banner, or device, designed or adapted to bring into public notice any party, organization, or movement." 103 S.Ct. at 1704 n. 1. In Grace the Supreme Court grounds were defined as the exterior premises and the municipal sidewalks. Id. at 1708. The Court held that "[t]he public sidewalks forming the perimeter of the Supreme Court grounds, in our view, are public forums and should be treated as such for First Amendment purposes." Id. In the instant case, the exterior premises of the Arlington Heights post office and other postal stations within the Northern Illinois District do not include municipal sidewalks and, therefore, 39 C.F.R. Sec. 232.6(h) does not regulate any expressive activity on this municipal property.
 
 
 17
 It is clear, however, that the regulation does prohibit public solicitation and the sale of literature on the ingress/egress sidewalks that are located on postal property and connect municipal sidewalks to the post office building. In Grace, the Supreme Court stated that "[s]idewalks ... are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." 103 S.Ct. at 1708. Nonetheless, the Court also stated that "[p]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." Id. at 1707 (citing Greer v. Spock, 424 U.S. at 836, 96 S.Ct. at 1216). Indeed, "[t]he Government, 'no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated.' " Id. (quoting Adderley v. Florida, 385 U.S. at 47, 87 S.Ct. at 247). See also Members of City Council v. Taxpayers for Vincent, 104 S.Ct. at 2134. Thus, the Court in Grace analyzed, in detail, the characteristics of the Supreme Court grounds and municipal sidewalks forming the perimeter of such grounds before holding that the municipal sidewalks constituted public forums. The Court observed that, "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." Id. 103 S.Ct. at 1708.
 
 
 18
 In the instant case, the record before this court consists of the plaintiffs' complaint, the parties' briefs and accompanying affidavits in support of summary judgment, and the district court opinion. The defendants included within one of their affidavits, floor plans and photographs of the postal stations in Broadview, Illinois; Chicago Heights, Illinois; Glendale Heights, Illinois; Roselle, Illinois; and Westchester, Illinois. Aside from these isolated bits of evidence, the record contains no floor plans, photographs, or other evidence concerning the physical characteristics of the remaining postal stations in the Northern Illinois District, generally ranging from the southern portion of Springfield, Illinois north to the Wisconsin border, from Gary, Indiana west to the Iowa border, and excluding Chicago, Rock Island, and Quincy, Illinois.[4] The lack of a complete evidentiary record precludes this court from analyzing the exterior premises of all the postal stations included within the scope of the plaintiffs' complaint. Accordingly, we are unable to determine whether the ingress/egress sidewalks leading to postal stations within the Northern Illinois District differ in any way from the municipal sidewalks, or whether there exists any indication of where municipal property ends and Postal Service property begins. In light of the limited record on appeal and the detailed analysis in Grace of the entire Supreme Court grounds, including municipal sidewalks, we decline to reach the constitutional issue of whether Postal Service property within the Northern Illinois District, including the ingress/egress sidewalks that connect the municipal sidewalks to the post office buildings, constitutes a traditional public forum under the Perry analysis.
 
 
 19
 We next consider the fact that the Postal Service allows members of the public to distribute free literature on postal property. The Postal Service admits in its brief that 39 C.F.R. Sec. 232.6(h) "prohibits sales and solicitation of money" on Postal Service property, the "regulation does not prohibit the free distribution of literature or other First Amendment activity" on such property. It would thus appear that to the extent postal property is open for the "free distribution of literature or other First Amendment activity," the property constitutes a designated public forum under the Perry analysis. However, the limited record in this case does not reveal whether the postal property in the Northern Illinois District is "open for use by the general public" Perry, 103 S.Ct. at 956, to distribute free literature. The record contains no evidence of whether the postal stations in the Northern Illinois District require a member of the public to obtain a permit or authorization from the local postmaster before distributing free literature on postal property. Furthermore, the record does not establish whether the postal stations in the Northern Illinois District confine the distribution of free literature to a particular time and/or a particular area of postal property.[5] Recent Supreme Court decisions suggest that these factors should be analyzed before concluding that Postal Service property in the Northern Illinois District is generally open to the public for expressive activity as a designated public forum under the Perry analysis. For example, in Perry the Court ruled that "selective access" to a public school's mail system did not "transform government property into a public forum." Perry, 103 S.Ct. at 955. Similarly, in Greer v. Spock, the fact that civilian speakers and entertainers had, in the past, been invited to appear at a military base did not convert the base into a public forum. 424 U.S. at 838 n. 10, 96 S.Ct. at 1217 n. 10. So too, in Lehman v. City of Shaker Heights, the city's policy of authorizing limited access to transit system advertising space did not transform such space into a public forum. 418 U.S. at 304, 94 S.Ct. at 2718. In light of the limited evidentiary record in this case, we decline to reach the constitutional issue of whether postal property in the Northern Illinois District constitutes a designated public forum under the Perry analysis.
 
 
 20
 That is not to say, however, that this court is constrained from ruling on the constitutionality of 39 C.F.R. Sec. 232.6(h). As previously noted, reasonable time, place, and manner restrictions may be enforced in a public forum if they are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. See Grace, 103 S.Ct. at 1707; Perry, 103 S.Ct. at 955; U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 132, 101 S.Ct. at 2686; Heffron, 452 U.S. at 647-48, 101 S.Ct. at 2563-64. According to the Court in Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." 408 U.S. at 116, 92 S.Ct. at 2303. In the instant case, previous postal regulations reveal that the Postal Service at one time allowed limited authorized solicitation on postal property but has since banned all solicitation (including the solicitation of public contributions and the sale of literature) as a manner of expression on postal property because it interferes with daily postal operations. Accordingly, even if we were to rule, which we do not, that postal property constitutes a public forum, the prohibition of solicitation set forth in 39 C.F.R. Sec. 232.6(h) would be a reasonable "manner" type of restriction on the exercise of free speech, and thus not in violation of the First Amendment.
 
 
 21
 A valid manner restriction "may not be based upon either the content or subject matter of speech." Consolidated Edison Co. v. Public Service Commission, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). See also Heffron, 452 U.S. at 648, 101 S.Ct. at 2564. In the instant case, 39 C.F.R. Sec. 232.6(h) prohibits all solicitations of public contributions and sales of literature on Postal Service property and "applies evenhandedly to all who wish to ... sell written materials or to solicit funds." Heffron, 452 U.S. at 649, 101 S.Ct. at 2564. The regulation does not restrict speech based upon "its message, its ideas, its subject matter, or its content," Police Department of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972), nor does it allow for arbitrary application by postal authorities. See Heffron, 452 U.S. at 649, 101 S.Ct. at 2564. Thus, we hold that 39 C.F.R. Sec. 232.6(h) satisfies the content-neutral requirement of a reasonable manner restriction.
 
 
 22
 We next analyze the significant government interest to be served by prohibiting the solicitation of public contributions and the sale of literature on postal property. According to the Supreme Court in Heffron, the government interest "must be accessed in light of the characteristic nature and function of the particular forum involved." 452 U.S. at 650-51, 101 S.Ct. at 2565-66. See also Grayned v. City of Rockford, 408 U.S. at 116, 92 S.Ct. at 2303. In the instant case, Congress formed the United States Postal Service in August 1970, as an independent establishment of the executive branch of the United States Government. See 39 U.S.C. Sec. 201 (1982).[6] Congress stated that the Postal Service "shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities. ... In determining all policies for postal services, the Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation and delivery of important letter mail." 39 U.S.C. Sec. 101 (1982) (emphasis added). In addition, the district court found that:
 
 
 23
 "post offices, though freely open to the public during business hours, exist to provide a single service. People come to post offices to 'buy stamps and other postal products, mail letters and parcels, pick up postage due, business reply, insured certified, or registered mail, pick up mail from lock boxes, purchase or redeem postal money orders, have postage meters reset, [and] file changes of address.' " (quoting from the affidavit of Arthur Porwick, Director, Office of Post Office Services, Delivery Services Department).
 
 
 24
 Accordingly, the "characteristic nature and function" of postal stations throughout the United States, its territories and possessions, is to provide postal patrons with prompt, reliable, and efficient services, including the sale of stamps, the receipt and delivery of mail, and the sale of postal money orders.
 
 
 25
 To facilitate the efficient operation of the United States mail system, Congress granted the Postal Service the power "to adopt, amend, and repeal such rules as it deems necessary to accomplish [its] objectives ...." 39 U.S.C. Sec. 401 (1982). In March 1971, the Postal Service issued a regulation entitled "Solicitation of funds" which provided:
 
 
 26
 "(a) Special types. (1) A number of established national health, welfare, and veteran's organizations engage in limited or specialized methods to solicit funds at the local community level, for worthy, humanitarian programs. The use of poppies or other tokens by established veterans' organizations is an example of a specialized method of solicitation.
 
 
 27
 (2) Postmasters or installation heads, at their discretion, may authorize these organizations to solicit funds by a limited or specialized method at entrances, or in concourses or lobbies. Enter into an agreement with the local representative of the organization to specify the locations, number of solicitors, and any other necessary limitations.
 
 
 28
 (3) National Health and Joint Crusade Agencies: Discretionary authority is granted to afford privileges similar to those mentioned in Sec. 243.3(a)(2) to the following agencies:
 
 
 29
 (i) American Cancer Society.
 
 
 30
 (ii) American Heart Association.
 
 
 31
 (iii) The Arthritis and Rheumatism Foundation.
 
 
 32
 (iv) Muscular Dystrophy Association of America.
 
 
 33
 (v) National Association for Mental Health.
 
 
 34
 (vi) National Multiple Sclerosis Society.
 
 
 35
 (vii) National Society for Crippled Children and Adults.
 
 
 36
 (viii) National Society for the Prevention of Blindness.
 
 
 37
 (ix) National Tuberculosis Association.
 
 
 38
 (x) United Cerebral Palsy Association.
 
 
 39
 (xi) CARE.
 
 
 40
 (xii) Crusade for Freedom.
 
 
 41
 (xiii) The American Korean Foundation.
 
 
 42
 (4) The American Red Cross. The American Red Cross may have stands in lobbies during its annual roll calls or special fund raising campaigns, providing they do not interfere with the transaction of postal business or require the expenditure of time or equipment by the Postal Service or its employees.
 
 
 43
 (5) Prohibitions. Soliciting subscriptions, canvassing for the sale of any article, or making collections except as provided above are prohibited in buildings operated by the Postal Service."
 
 
 44
 36 Fed.Reg. 4766 (1971) (emphasis added) (codified at 39 C.F.R. Sec. 243.3 (1972)). The following year, in November 1972, the Postal Service amended the general rule prohibiting solicitation on postal property to include "[s]oliciting alms and contributions or collecting private debts on postal premises." 37 Fed.Reg. 24346-47 (1972) (codified at 39 C.F.R. Sec. 232.6(h)(1) (1973)). In turn, the exception to the general rule was broadened to include "[n]ational organizations which are wholly non-profit in nature and which are devoted to charitable or philanthropic purposes ... [and] local charitable and other non-profit organizations." 38 Fed.Reg. 27824-25 (1973) (codified at 39 C.F.R. Sec. 232.6(h)(2)(3) (1974)). The Postal Service permitted these organizations to "request use of lobby space for annual or special fund raising campaigns, providing they do not interfere with the transaction of postal business or require expenditures by the Postal Services or the use of its employees or equipment." Id. In August 1978, the Postal Service promulgated 39 C.F.R. Sec. 232.6(h), the regulation presently before this court for review. In that regulation the Postal Service deleted the non-profit, charitable organization exception to the general rule prohibiting solicitation on postal property. The Postal Service explained that:
 
 
 45
 "[T]here are omitted from the replacement regulation certain provisions of the previous regulation which allowed the use of postal lobby space for fund raising campaigns of nonprofit organizations. The use of lobby space for such activity had been highly unsatisfactory. Most postal lobbies are layed out for the sole purpose of providing efficient service and cannot therefore accommodate non-postal activities without disturbing postal employees in the performance of their duty and impeding the public in transacting postal business; additionally, the use of lobbies only by nonprofit philanthropic and charitable organizations for fund raising has come to be viewed as unjustifiably discriminatory by some excluded individuals and groups. Deletion of this provision of the regulations would correct the operational and legal problems."
 
 
 46
 43 Fed.Reg. 38824 (1978) (emphasis added). It is thus apparent that the Postal Service did, at one time, allow a limited number of authorized, non-profit, charitable organizations to solicit in postal lobbies but discontinued the practice because of the disturbance caused to "postal employees in the performance of their duties" and the impediment presented to "the public in transacting postal business."[7]
 
 
 47
 Moreover, in deleting the non-profit, charitable organization exception to the general rule prohibiting solicitation on postal property the Postal Service stated:
 
 
 48
 "The Postal Service decided not to disturb the long standing prohibition against soliciting alms and contributions on postal premises. Preservation of this regulation was deemed necessary to prevent disruptions and hindrances to the conduct of postal business. The solicitation of alms and contributions is an inherently more aggressive form of conduct, and more likely to hinder the orderly transaction of postal business, than is the expression of ideas.
 
 
 49
 Since the act of soliciting alms or contributions usually has as it [sic] objective an immediate act of charity, it has the potentiality for evoking highly personal and subjective reactions. Reflection usually is not encouraged and the persons solicited often must make a hasty decision whether to share his resources with an unfamiliar organization while under the eager gaze of the solicitor."
 
 
 50
 43 Fed.Reg. 38824 (1978) (emphasis added). According to this language, the Postal Service has determined that a complete ban of solicitation on postal property is "necessary to prevent disruptions and hindrances to the conduct of postal business." Id. This determination was based in part upon the problems encountered by allowing authorized, non-profit, charitable organizations to solicit in postal lobby interiors and in part upon the realization that solicitation "is an inherently more aggressive form of conduct ... than is the expression of ideas." Id. Indeed, as Justice Blackmun noted in Heffron:
 
 
 51
 "The distribution of literature does not require that the recipient stop in order to receive the message the speaker wishes to convey; instead the recipient is free to read the message at a later time.... In contrast, ... sales and the collection of solicited funds not only require the [solicitee] to stop, but also 'engender additional confusion ... because they involve acts of exchanging articles for money, fumbling for and dropping money, making change, etc.' "
 
 
 52
 Heffron, 452 U.S. at 665, 101 S.Ct. at 2573 (emphasis added) (Blackmun, J., concurring in part, dissenting in part) (quoting Heffron v. International Society for Krishna Consciousness, 299 N.W.2d 79, 87 (Minn.1980)).
 
 
 53
 In its majority opinion, the Court in Heffron established that "[a]s a general matter, it is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." 452 U.S. at 650, 101 S.Ct. at 2565. In that case, a Minnesota statute required that any member of the public who wished to distribute or sell literature or solicit public contributions at the state fair had to confine their activities to designated booths located on the 125-acre state-owned fairgrounds. According to the Court, "the State's interest in the orderly movement and control of ... an assembly of persons is a substantial consideration." Id. Thus, the Court held that "the State's interest in confining distribution, selling, and fund solicitation activities to fixed locations is sufficient to satisfy the requirement that a place or manner restriction must serve a substantial state interest." Id. at 654, 101 S.Ct. at 2567.
 
 
 54
 In the instant case, the postal stations in the Northern Illinois District and throughout the United States, its territories and possessions, clearly have a significant interest and obligation in providing postal patrons with prompt, reliable, and efficient services. In order to promote this interest, fulfill this obligation, and "prevent disruptions and hindrances to the conduct of postal business," 43 Fed.Reg. at 38824, the Postal Service must promulgate regulations of uniform application for the unique physical layout of each of these 30,000 postal stations. As the Court in U.S. Postal Service v. Greenburgh Civic Assns. stated:
 
 
 55
 "If Congress and the Postal Service are to operate as efficiently as possible a system for the delivery of the mail which serves a Nation extending from the Atlantic Ocean to the Pacific Ocean, from the Canadian boundary on the north to the Mexican boundary on the south, it must obviously adopt regulations of general character and uniform applicability throughout the more than three million square miles which the United States embraces. In so doing the Postal Service's authority to impose regulations cannot be made to depend on all the variations of climate, population, density, and other factors that may vary significantly within a distance of less than 100 miles."
 
 
 56
 453 U.S. at 133, 101 S.Ct. at 2687 (emphasis added). Accordingly, the Postal Service has promulgated 39 C.F.R. Sec. 232.6(h), a narrowly tailored regulation that prohibits only solicitation, not all forms of expression, on postal property. Cf. Members of City Council v. Taxpayers for Vincent, 104 S.Ct. at 2130-32 (ordinance prohibiting posting of signs curtails no more speech than necessary to accomplish purpose). Based upon the problems encountered when authorized, nonprofit, charitable organizations were permitted to solicit on postal property, and an awareness that solicitation of this type, by its very nature, is inherently more assertive and aggressive than other forms of speech, the Postal Service determined that "this regulation was ... necessary to prevent disruptions and hindrances to the conduct of postal business." 43 Fed.Reg. 38824 (1978). In addition, the regulation is uniformly applied to the 30,000 postal stations throughout the United States, its territories and possessions, to provide postal patrons with prompt, reliable, and efficient service. In light of the totality of the circumstances, including the disruption to postal business caused by solicitation, the 30,000 unique postal stations under the control of the Postal Service, and the need for postal regulations with uniform applicability, we hold that 39 C.F.R. Sec. 232.6(h) is a narrowly tailored regulation that serves the significant government interest of prompt, reliable, and efficient postal service.[8]
 
 
 57
 Finally, 39 C.F.R. Sec. 232.6 provides more than ample alternative channels for the free expression of speech. The regulation in no way prohibits a member of the public, who acts in compliance with local ordinances and state laws, from soliciting public contributions or selling literature on the municipal sidewalks surrounding and/or adjacent to postal property. Furthermore, any member of the public is free to converse on Postal Service property and may distribute free literature on such property. Cf. Members of City Council v. Taxpayers for Vincent, 104 S.Ct. at 2133 (ordinance did not affect right to speak and distribute literature where posting of signs prohibited); Kovacs v. Cooper, 336 U.S. 77, 89, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949) (ordinance did not restrict the communication of ideas or the discussion of issues by human voice or pamphlet). We add that the distributed literature could adequately explain the organization, how to obtain a membership, and where to send any contribution. In this way, the organization could convey its message without disrupting postal business and the recipient would be free to read the message at a later time. Accord Heffron, 452 U.S. at 665, 101 S.Ct. at 2573 (Blackmun, J., concurring in part, dissenting in part). Based upon our review of 39 C.F.R. Sec. 232.6(h), it is clear that the regulation is content-neutral, is narrowly tailored to serve the significant government interest of providing postal patrons with prompt, reliable and efficient service, and provides more than ample alternatives for the free expression of speech. Accordingly, we hold that 39 C.F.R. Sec. 232.6(h), on its face and as applied, is a reasonable "manner" restriction, and thus is not violative of the plaintiffs' First Amendment rights to free speech.
 
 
 58
 The Coalition further contends that it "financially survives by soliciting monies from the public," and thus as an organization it "cannot function" if prohibited from soliciting and allowed only to distribute free literature. The Coalition claims that 39 C.F.R. Sec. 232.6(h) discriminates in violation of the Equal Protection clause of the Fifth Amendment because it prohibits the Coalition's manner of speech (solicitation), but not the manner of speech of those organizations that can afford to, and do in fact, distribute free literature. We adhere to the reasoning of the Supreme Court in Heffron, that the Coalition's alleged need to solicit public contributions and sell literature does not afford it First Amendment rights superior to those of any other social, political, or religious organization. 452 U.S. at 652-53, 101 S.Ct. at 2566-67. It is clear that 39 C.F.R. Sec. 232.6(h) is content-neutral and as applied by the Postal Service, prohibits all solicitation of public contributions and sales of literature on postal property. Thus, in light of our holding that 39 C.F.R. Sec. 232.6(h) is a reasonable regulation that serves the significant government interest of prompt, reliable, and efficient postal service, we further hold that 39 C.F.R. Sec. 232.6(h) does not violate the plaintiffs' Fifth Amendment rights to equal protection of the laws.
 
 III
 
 59
 We affirm the judgment of the district court.
 
 
 60
 HARLINGTON WOOD, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 61
 Although I fully concur in the result reached in the majority opinion upholding the solicitation ban applicable to post office interiors, I have reservations, on the record we have before us, about upholding the ban as applied to the public sidewalks on all post office grounds.
 
 
 62
 The majority takes note of the meager record and finds it insufficient to determine whether a post office sidewalk may constitute a public forum, but goes on to uphold the blanket outside prohibition. Although I share the majority concerns about outdoor solicitation possibly adversely affecting post office operations and public access, I believe that United States v. Grace, --- U.S. ----, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), does not allow an entry of summary judgment on this sparse record.
 
 
 63
 Expressive activities cannot be allowed to obstruct the sidewalk or access to a building, or to otherwise interfere with the intended use of the premises. But Grace reminds us that public sidewalks have traditionally been open to the public for the exercise of First Amendment rights. An absolute prohibition on their use for expressive activities will therefore be upheld only if narrowly drawn to accomplish a compelling governmental interest. Grace, 103 S.Ct. at 1707. It seems to me that if the public sidewalks around our Supreme Court are held to be a public forum, then the public sidewalks around post offices are no less a public forum. In fact, the post office has recognized this to a degree by already permitting leaf-letting on the sidewalks. Soliciting may have more inherently obstructive possibilities and therefore may justify restriction, but this record lacks sufficient support to accept that view as a matter of law. The post office points to no unsatisfactory experiences with outside solicitation, as it has had with inside solicitation. Arthur Porwick's affidavit, which is the only evidence the post office submitted on the problems caused by allowing solicitation, speaks only to problems that have resulted from allowing solicitation activities inside postal lobbies. Grace holds that a restriction on First Amendment rights in a public forum is at least presumptively impermissible. Public forum property occupies a special position in terms of First Amendment protection. I fear that in this case we are not giving it the special protection to which it is entitled.
 
 
 64
 There are apparently about 30,000 post offices, many with different premises configurations. The experienced district judge speculated, as I do, that it is possible that some post office facilities are adequate for outside solicitation without interference with post office activities. But the district judge declined to permit that possible use because of the potential administrative burden it would impose on the post office. Designing a different regulation for each post office probably is not feasible, but it may not be necessary. There may be some general categories that would help distinguish those post offices that might be suitable for First Amendment activities. Permitting some sidewalk use would no doubt take some administrative time and cause other problems. But the post office has not sufficiently demonstrated on this record that these problems would be of such a magnitude as to justify a ban on all solicitation.
 
 
 65
 Before this broad prohibition is applied to public sidewalks on post office premises, particularly sidewalks of an institution dedicated to communication among peoples, I believe the post office should be required to more fully justify its position. The First Amendment is too deservedly revered to be so lightly satisfied.
 
 
 66
 I would reverse the summary judgment on the public sidewalk issue and remand to give the district court the opportunity to reopen the issue for further exploration. I do not intend by my view to prejudge the case or imply that the post office public sidewalks should be opened for solicitation regardless. The result my colleagues have reached may in the long run be correct. I am just a little harder to convince without more evidence. To that extent, I respectfully dissent.
 
 
 
 [1]
 According to the affidavit of Richard Koenigs, District Manager for the Northern Illinois District of the United States Postal Service:
 "[The Northern Illinois] District encompasses the area in the State of Illinois south from the Wisconsin State line to the southern borders of zip code areas 618-619 (Champaign, IL) and 625-626 (Springfield, IL), except for the city of Chicago, the Rock Island, IL 612 area and the Quincy, IL 623 area included in the Northern Illinois District is Gary, Indiana 463 area."
 
 
 [2]
 The United States Postal Service promulgated 39 C.F.R. Sec. 232.6 in August 1978, effective October 1, 1978. See 43 Fed.Reg. 38824-25 (1978). In July 1981, the section was redesignated 39 C.F.R. Sec. 232.1. See 46 Fed.Reg. 34330 (1981)
 
 
 [3]
 The defendants argue that 39 C.F.R. Sec. 232.6 is content-neutral. That is, the regulation does not restrict expression because of its message, its ideas, its subject matter, or its content. According to the defendants, the regulation prohibits only one manner of expression, solicitation; it does not prohibit expression based upon content. The defendants conclude that 39 C.F.R. Sec. 232.6 does not discriminate against expressive activity on the basis of content, and therefore does not violate the Equal Protection clause of the Fifth Amendment
 
 
 [4]
 See supra note 1
 
 
 [5]
 Pursuant to 39 C.F.R. Sec. 232.1(e) (1983):
 "conduct ... which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on [postal] property is prohibited."
 Additionally, 39 C.F.R. Sec. 232.1(k)(2), prohibits "[t]he blocking of entrances, driveways, walks, loading platforms, or fire hydrants in or on [postal] property...." The record in the instant case, however, contains no evidence on the issue of whether postal stations within the Northern Illinois District further restrict the distribution of free literature on postal property.
 
 
 [6]
 Previous to the formation of the United States Postal Service in 1970, the mail system in the United States, its territories and possessions, was operated through the Post Office Department
 
 
 [7]
 The affidavit of Arthur Porwick, Director, Office of Post Office Services, Delivery Services Department, adds that:
 "Postmasters often found themselves in the position of having to choose objectively among several sponsors competing for limited space. In many instances fund solicitation materials tended to cause clutter, litter, and prevent display of essential postal materials. Most postal lobbies are too small to accommodate activities not related to postal purposes without disturbing employees at work and/or impeding customer traffic. Additionally, regulation of soliciting activity tended to be unduly expensive." (emphasis added).
 
 
 [8]
 We note that the significant government interest of providing postal patrons throughout the United States, its territories and possessions, with prompt, reliable, and efficient postal service differs substantially from the government interest in Schaumburg v. Citizens for a Better Environment, of protecting citizens of a single village from fraud. In that case, the Village of Schaumburg passed an ordinance that required every charitable organization to prove that 75% of its proceeds were used for charitable purposes before it received a permit to solicit within the Village. The Court held that "[t]he Village's legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition of solicitation. Fraudulent misrepresentations can be prohibited and penal laws used to punish such conduct directly." 444 U.S. at 637, 100 S.Ct. at 836. In the instant case, the Postal Service must promulgate regulations of uniform application for the 30,000 unique postal stations throughout the United States, its territories and possessions, to effectively control "disruptions and hindrances to the conduct of postal business." 43 Fed.Reg. 38824 (1978). These postal "regulations cannot be made to depend on all the variations of climate, population, density, and other factors [including the physical layout of 30,000 postal stations] that may vary significantly within a distance of less than 100 miles." U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 133, 101 S.Ct. at 2687