**ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW, ("ACORN") Kurt Roscow, Melissa Neumiller, Charles Murawski, and Sally Worland, Plaintiffs-Appellants,**

v.

**MUNICIPALITY OF GOLDEN, COLORADO, and Golden Police Department, Defendants-Appellees.**

No. 82–1310.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1984.

Stephen Bachmann, New Orleans, La. (Philip Green, Denver, Colo., was also on brief), for plaintiffs-appellants.

Russell J. Sindt, Golden, Colo., for defendants-appellees.

Before HOLLOWAY, McWILLIAMS and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

The Association of Community Organizations for Reform Now (ACORN) brought this action under 42 U.S.C. §§ 1983, 1988 and the First and Fourteenth Amendments against the City of Golden, Colorado. ACORN sought an injunction against enforcement of the City of Golden's ordinance which prohibited door-to-door canvassing without first obtaining an exemption. The district court entered judgment in favor of the City of Golden. Plaintiff appeals.

I

*The Factual Background*

ACORN is a non-profit corporation organized under Arkansas law, and registered to do business in Colorado. ACORN's stated purpose is to assist low and moderate income people to organize their neighborhoods and petition for redress on issues of concern to them.

ACORN's canvassing staff goes door-to-door through neighborhoods informing people about its work, encouraging people to sign a petition and participate directly, and seeking donations. II R. 10, 15. ACORN desired to canvass the City of Golden because it wanted to solicit support for its opposition to the Public Service Company's rate increases and wintertime disconnection policies. *See* II R. 10–11, 25. Before canvassing an area, ACORN has a "standard procedure" of contacting municipalities and providing the municipality with basic information about ACORN, which includes the names of the canvassers, a sample identification card, and a copy of the petition. II R. 12–13.

ACORN was aware that the City of Golden had an ordinance prohibiting uninvited door-to-door peddling, soliciting and poll taking, unless the city manager issues an exemption. Under the ordinance, the city manager "shall issue" an exemption after the city council "determine[s]" that the solicitation, peddling or poll taking is for a "charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance." Golden, Colo., Business Regulations and Licenses ch. 4.44 § 4.44.020 (1975). To apply for an exemption, an applicant must provide the city council with a sworn written application containing general information such as the names and addresses of its officers, the purpose for which the exemption is sought, the anticipated use of the proceeds, the time period the applicant intends to canvas, and whether canvassers are compensated. Id. § 4.44.030.[1]

---

1. The pertinent sections of the City of Golden's ordinance are set forth below.

 4.44.010 Soliciting, peddling and poll taking prohibited. It is illegal for any person, firm or corporation, whether a resident of Golden or not, to sell, solicit for sale, attempt to sell or take orders for the sale of any goods, wares, merchandise, periodicals, books, magazines or personal property of any kind, or services, or contracts, subscriptions or memberships for services or privileges; or to solicit or have solicited in its name money, donations of money or property, or financial assistance of any kind; or to conduct polls,

ACORN decided not to apply for an exemption after consulting with its attorneys, taking the position that the information sought was outside that which could be required under the First Amendment, and that ACORN's activities were not truly philanthropic, charitable or religious and therefore its activities were not within the definitions for the exemption. II R. 14. Instead of applying an exemption ACORN wrote the City of Golden a letter explaining that it intended to canvas on November 5. The letter outlined ACORN's program, provided the City with a list of canvassers, and a certificate of registration from the State of Colorado, and listed the dates on which ACORN intended to canvass the City of Golden. II R. 13–14. The letter also requested the City of Golden to contact ACORN if anything "appeared out of line." II R. 14–15. The City of Golden never contacted ACORN.

On November 5, 1980 ACORN representatives began canvassing door-to-door in the City of Golden. II R. 25. The canvassers explained ACORN's opposition to the Public Service Company's proposed rate increase, and asked people to sign a petition, and donate what they could. The canvassers met with a positive reception within the community. II R. 25–26, 31. The following day the City of Golden's police told the canvassers to cease and desist. Some canvassers were cited for violating the ordinance, and canvassing stopped.[2] The City of Golden confirmed by

opinion samples or other informational canvassing from house to house or from business to business within the city limits unless so invited or requested by the owners or occupants of the house or business. (Ord. 717 § 1(2), 1974: Ord. 683 § 1 (part), 1973).

4.44.020 Exemptions. The provisions of this chapter shall not apply to persons and organizations granted exemptions. The city manager shall issue exemptions to persons and organizations after the city council has determined that such solicitation, peddling, hawking, or house-to-house selling of goods at retail is charitable, religious, patriotic or philanthropic or business-to-business selling of goods, services, contracts, subscriptions or memberships or polling is for a charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance to the residents of the city. (Ord. 717 § 1(a), 1974; Ord. 683 § 1 (part), 1973).

4.44.030 Applicants for exemptions. In order to obtain an exemption as provided for in this chapter, the applicant shall file with the city manager a sworn application in writing containing the following information:

A. The applicant's name and the names and addresses of officers and directors of such applicant;

B. The name and purpose of the cause for which the exemption is sought and the specific anticipated use of the proceeds or information;

C. The method whereby the goods or services are to be sold and delivered, donations solicited or polls conducted;

D. The time period during which the solicitation, peddling or polling is to be carried on;

E. Whether or not any commissions, fees, wages or emoluments are to be expended in connection with such solicitation, peddling or polling, and the amounts thereof. (Ord. 717 § 1(4), 1974: Ord. 683 § 1 (part), 1973).

4.44.040 Penalty. Any person violating the provisions of this chapter is guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not less than ten dollars, nor more than one hundred dollars. (Ord. 683 § 1 (part), 1973).
Defendant's Exhibit A.

**2.** We note that at the time this suit was brought one of the named plaintiffs, Melissa Neumiller, had criminal charges pending against her for violating the ordinance. II R. 3, 7–8. Ordinarily abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), would be appropriate as to her. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928–29, 95 S.Ct. 2561, 2566–2567, 45 L.Ed.2d 648 (1975). Moreover, abstention as to the other plaintiffs might be proper if this were a situation in which, although the plaintiffs are "legally distinct," they "are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Id.* at 928, 95 S.Ct. at 2566; *see also Women's Community Health Center of Beaumont, Inc. v. Texas Health Facilities Commission,* 685 F.2d 974, 981–82 (5th Cir.1982). However for the reasons that follow, we believe that this is not a case in which we need address this issue.

We conclude that the City of Golden has voluntarily submitted to a federal forum, and therefore "principles of comity [underlying the *Younger* abstention doctrine] do not demand that the federal court force the case back into the State's own system." *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 480,

statement of counsel that it "is prepared to enforce this ordinance," and that if ACORN representatives were again to canvass in Golden, the ordinance would be enforced against them. II R. 32–33.

ACORN brought suit. The district court denied ACORN's motion for a preliminary injunction, concluding that ACORN had not shown a sufficient probability of success on the merits. II R. 69. The parties jointly moved for a bifurcated trial, reserving the issues of damages and attorneys' fees. In the pre-trial order the parties agreed to submit the issue of liability to the court on the record of the preliminary injunction, supplemented with stipulated facts and exhibits. I R. 16.

The trial judge entered judgment for Golden. He found it important that applications for exemptions were rarely refused, and that ACORN had refused to apply for one. Trial Court op. at 3, 4. The court distinguished *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), in which the Supreme Court struck down as overbroad an ordinance prohibiting issuance of a solicitation permit to charitable organizations that do not use at least 75 percent of their receipts for charitable purposes. The court deemed *Schaumburg* "inapposite" because in the City of Golden's ordinance "there is no ... effort to intrude into the functioning of soliciting organizations." Trial Court op. at 4. The court also noted that although *Hynes v.*

*Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), struck down as unduly vague an antisolicitation ordinance which applied to political organizations, the Supreme Court did recognize that reasonable regulations in this area are permissible if drawn with "narrow specificity." Trial Court Op. at 4.

Although the trial court believed that the definition of the kinds of organizations which the city council may determine to be exempt from the Golden ordinance's prohibition is "certainly not specific," and that "the words 'charitable, religious, patriotic, or philanthropic' may be considered vague and indefinite and the catch-all clause, 'or otherwise provides a service or product so necessary to the general welfare' as not to constitute a nuisance is uncertain of meaning," the ordinance was not unconstitutional. *Id.* at 4–5 (quoting Golden ordinance). The court apparently reasoned that the ordinance would "clearly be unconstitutional" if police were charged with determining which groups were entitled to an exemption; however, the court concluded that because the city council, not the police, makes this determination, the ordinance is constitutional. *Id.* at 5.

Although the court recognized that it is possible that the "city council may abuse the rights of some persons in denying exemptions or grant them on an unlawfully discriminatory basis," it was appropriate to assume an exemption would be granted if submitted by ACORN; that Golden's City

97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977); *see also Midkiff v. Tom*, 702 F.2d 788, 803 (9th Cir.1983) (in submitting issue of statute's constitutionality to district court, it appears that Hawaii attorney general effectively waived claim for *Younger* abstention), *rev'd on other grounds*, —— U.S. ——, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 163 n. 6 (5th Cir.1978) (appellant did not raise *Younger* abstention question, and that issue being nonjurisdictional, is thus not before the court), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam); C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4252, at 547–48 (1978) (Although one court has raised on its own motion whether *Younger* principles apply, later cases suggest that state may waive the protection that "Our Federalism" would otherwise confer.).

It appears from the record that the City of Golden voluntarily stayed criminal proceedings against Ms. Neumiller, pending resolution of the ordinance's validity in federal court. I R. 3, 7–8. Although during the hearing on ACORN's motion for a preliminary injunction the City of Golden did ask that the trial court abstain, it does not appear that this request was on *Younger* grounds. Rather the City Attorney explained that he was raising the issue of ripeness. I R. 7. Moreover, neither the pre-trial order, defendant's trial memorandum, nor its brief on appeal ask the court to abstain. I R. 16; *id.* at 33–40; Brief of Defendants-Appellees. Accordingly, this is not a case in which we should invoke the *Younger* abstention doctrine.

Attorney has said he would recommend an exemption for ACORN; and that the granting of it would be consistent with exemptions given to other groups, including the Golden Citizen's Action Association. *Id.* at 5. The court believed that the "narrow question presented by the attack on the facial validity" of the ordinance is whether it is constitutional to require an application for an exemption. The court answered this question in the affirmative. Because the trial judge believed that "nothing more is presented in this case," he entered judgment dismissing the action. *Id.* at 5–6.

On appeal, ACORN argues for reversal because the ordinance: (1) permits content review; (2) constitutes a prior restraint; (3) is unconstitutionally vague; (4) unconstitutionally delegates discretion to the city council; (5) unduly burdens the First Amendment right to privacy; and (6) is unconstitutional as applied. The City of Golden does not respond directly to these separate arguments. Rather, Golden argues generally that the ordinance is constitutional as a reasonable time, place, and manner regulation. Without reaching all the contentions of ACORN, we are convinced that we must hold the ordinance invalid because it vests unguided discretion in municipal officials to control protected activities within the ambit of the First and Fourteenth Amendments, and is not content neutral.

## II

### *Analysis*

A. *Failure to apply for an exemption*

■ The City of Golden argues that "ACORN has sought to challenge the solicitation ordinance without filing for an exemption thereto. The exemption process required by the City of Golden is reasonable and valid, and ACORN has created an unnecessary controversy by refusing to file for the same." Brief of Defendants-Appellees 6. Furthermore, the City Attorney for Golden believes that a basis for exempting ACORN exists although the final decision rests with the city council. *Id.* at 7. As we understand Golden's argument, it takes the position that ACORN should be required to apply for and be denied an exemption before bringing a facial challenge to the ordinance. We cannot agree.

Applying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law. One faced with an unconstitutional law requiring him to obtain a license or exemption before engaging in First Amendment activity "may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969) (footnote omitted). " 'The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands.' " *Id.* (quoting *Jones v. Opelika,* 316 U.S. 584, 602, 62 S.Ct. 1231, 1242, 86 L.Ed. 1691 (1942) (Stone C.J., dissenting) (adopted per curiam on rehearing 319 U.S. 103, 104, 63 S.Ct. 890, 890, 87 L.Ed. 1290 (1943))). Thus, " '[o]ne who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it.' " *City Council of Los Angeles v. Taxpayers for Vincent,* —— U.S. ——, —— n. 16, 104 S.Ct. 2118, 2125 n. 16, 80 L.Ed.2d 772 (1984) (emphasis added) (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093 (1940)); *see also Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938) ("As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it."); *Schneider v. State,* 308 U.S. 147, 165, 60 S.Ct. 146, 152, 84 L.Ed. 155 (1939) ("[T]he ordinance in question, as applied to the petitioner's conduct, is void, and she cannot be punished for acting without a permit.").

■ This principle is not limited to cases in which an individual or organization is defending against criminal charges. It also permits such facial challenges by suits for injunctive or declaratory relief against laws requiring an exemption or permit, so long as the plaintiff has standing. *See,*

*e.g., Strasser v. Doorley,* 432 F.2d 567, 568 (1st Cir.1970); *Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124, 1126 (S.D.N.Y.1979); *see also Fernandes v. Limmer,* 663 F.2d 619, 625 (5th Cir.1981), *cert. dismissed,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982).[3]

Here the trial judge reasoned that "the narrow question presented by the attack on the facial validity of this ordinance is whether the requirement of an application for an exemption is unreasonable." Trial

Court op. at 5–6. Holding the ordinance valid, the court upheld the requirement to obtain a permit. For reasons that follow, we are persuaded that the ordinance infringes First and Fourteenth Amendment rights and therefore ACORN is entitled to challenge the ordinance without first applying for an exemption.[4]

### B. *Unguided Discretion*

■ As noted, ACORN's goal is to assist persons of low and moderate income to

---

**3.** ACORN has standing to bring this suit. The question whether an individual or organization has standing so that a court will decide the merits of the dispute "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

The constitutional limitations on a federal court's jurisdiction stem from Article III's "case" or "controversy" requirement. *Id.; see also Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* —— U.S. ——, ——, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984). A federal court's jurisdiction can be invoked only when "the plaintiff himself has suffered 'some threatened or actual injury, resulting from the putatively illegal action ....'" *Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205 (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)). ACORN has suffered such injury. ACORN representatives have been cited for violating the ordinance and the City of Golden stands ready to enforce the ordinance should ACORN again attempt to canvass in Golden. V R. 32–33. I R. 2. ACORN has thus suffered both actual and threatened injury as a result of the ordinance. *See Munson, supra,* —— U.S. at ——, 104 S.Ct. at 2845.

"In addition to the limitations on standing imposed by Article III's case or controversy requirement, there are prudential considerations that limit the challenges courts are willing to hear." *Munson, supra,* —— U.S. at ——, 104 S.Ct. at 2846. In this case ACORN claims that its own First Amendment rights have been and will continue to be infringed by the challenged ordinance. Thus, we believe that there is no prudential reason why the federal courts should not entertain this suit. Other courts hearing challenges to laws requiring a permit before engaging in First Amendment activity have also found that the plaintiffs had standing. *See, e.g., Fernandes v. Limmer,* 663 F.2d 619, 625 (5th Cir. 1981) (ordinance governing literature distribution and fund solicitation in Airport), *cert. dismissed,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982); *Strasser v. Doorley,* 432 F.2d 567, 568 (1st Cir.1970) (ordinance requiring registra-

tion and licensing of newsboy or bootblack); *New York Public Interest Research Group, Inc. v. Village of Roslyn Estates,* 498 F.Supp. 922, 926–28 (E.D.N.Y.1979) (door-to-door canvassing); *Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124, 1126 (S.D.N.Y.1979) (motion picture licensing scheme); *see also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.").

**4.** The City of Golden, in a supplemental memorandum, has cited a Fifth Circuit case that the City says upheld an ordinance "providing registration, identification and financial disclosure requirements for charitable solicitors." *See International Society for Krishna Consciousness of Houston Inc. v. City of Houston,* 689 F.2d 541 (5th Cir.1982). Golden apparently argues that the Fifth Circuit held that it was permissible to deny "a registration certificate for failure to provide the required information," and therefore ACORN's refusal to apply for an exemption is a valid reason to affirm the district court judgment upholding the constitutionality of the ordinance. We must reject this argument.

As we have explained, ACORN is not required to apply for and be denied an exemption before asserting a facial challenge to the ordinance. Moreover, *Krishna Consciousness* is completely consistent with our position. In *Krishna Consciousness* "[t]he parties stipulated that members of the society *have not applied for a certificate of registration to solicit contributions* and that some members have been prosecuted and fined for failing to obtain a permit before soliciting contributions." *Id.* at 544 (emphasis added). The Fifth Circuit, rather than granting judgment for defendant as the City of Golden seems to argue would be appropriate, went on to consider the facial validity of the ordinance. *Id.* at 550, 551, 552. In reversing the district

organize their neighborhoods so that they may petition authorities on issues of concern to them. In pursuit of this goal, ACORN's canvassing staff goes door-to-door informing residents of ACORN's program and seeking donations. II R. 10, 15. It is settled that such activities are protected by the First Amendment. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* —— U.S. ——, ——, ——, 104 S.Ct. 2839, 2847–2849, 81 L.Ed.2d 786 (1984) (charitable solicitations so intertwined with speech that they are entitled to protections of First Amendment); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980) (charitable appeals for funds, on the streets or door-to-door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment); *see also Hynes v. Mayor of Oradell,* 425 U.S. 610, 614–15, 620–23, 96 S.Ct. 1755, 1758, 1760–1762, 48 L.Ed.2d 243 (1976); *ACORN v. City of Frontenac,* 714 F.2d 813, 816 (8th Cir.1983) ("ACORN's canvassing and soliciting activities are clearly protected by the first amendment...."). Indeed door-to-door distribution of circulars may be entitled to special solicitude because it is less expensive than feasible alternatives and therefore more important to a large segment of our society. *See Taxpayers for Vincent, supra,* —— U.S. at —— n. 30, 104 S.Ct. at 2133 n. 30 (citing *Martin v. Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943)).

 Although door-to-door canvassing and soliciting, such as that in which ACORN engages, is protected by the First Amendment, such activities may be subject to reasonable regulation. However, regulation in this area must be done with "narrow specificity." *Hynes, supra,* 425 U.S. at 617, 619–20, 96 S.Ct. at 1759, 1760. The

law must be designed to serve the city's legitimate interests "without unnecessarily interfering with First Amendment freedoms .... 'Precision of regulation must be the touchstone ....'" *Schaumburg, supra,* 444 U.S. at 637, 100 S.Ct. at 836 (citations omitted) (quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963)). In addition, though duly enacted laws are ordinarily presumed constitutional, when a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality. *E.g., ACORN v. City of Frontenac,* 714 F.2d 813, 817 (8th Cir. 1983); *Rosen v. Port of Portland,* 641 F.2d 1243, 1246 (9th Cir.1981) (such laws are presumptively unconstitutional and state bears burden of justification); *Espinosa v. Rusk,* 634 F.2d 477, 482 (10th Cir.1980) (regulations which restrict exercise of First Amendment rights by requiring prior approval are suspect and face an unfavorable presumption of invalidity), *summarily aff'd,* 456 U.S. 951, 102 S.Ct. 2025, 72 L.Ed.2d 477 (1982).

Laws which vest municipal officials with the discretion to grant or deny a license or permit do not regulate with narrow specificity. As the Court stated in *Munson:*

> But even if the Secretary were correct, and the waiver provision were broad enough to allow for exemptions "whenever necessary," we would find the statute only slightly less troubling. Our cases make clear that a statute that requires such a "license" for the dissemination of ideas is inherently suspect. By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech. Under the Secretary's interpretation, charities whose First Amendment rights are abridged by the fundraising limitation simply would have traded a direct prohibition on their activity for a

court, the Fifth Circuit held that the ordinance was not facially unconstitutional on the grounds that the ordinance did not vest the tax-assessor collector with any discretion in the issuance of

a permit. *Id.* at 546. The court remanded for the trial judge to determine whether the ordinance was unconstitutional as applied. *Id.* at 552.

licensing scheme that, if it is available to them at all, is available only at the unguided discretion of the Secretary of State.

—— U.S. at —— n. 12, 104 S.Ct. at 2851 n. 12 (citations omitted); *see also Largent v. Texas,* 318 U.S. 418, 422, 63 S.Ct. 667, 669, 87 L.Ed. 873 (1943); *Fernandes v. Limmer,* 663 F.2d 619, 631 (5th Cir.1981), *cert. dismissed,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982); *International Society for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 822–23 (5th Cir. 1979).

A law's vagueness or ambiguity may be responsible for vesting municipal officials with unguided discretion. Imprecise language may vest authorities with the discretion to determine which groups and individuals are entitled to exercise First Amendment rights. *See, e.g., Schaumburg, supra,* 444 U.S. at 640, 100 S.Ct. at 837 (Rehnquist, J., dissenting) (plurality of past decisions turned primarily, if not exclusively, upon amount of discretion vested in municipal authorities to grant or deny permits on the basis of vague or nonexistent criteria); *Hynes, supra,* 425 U.S. at 621–22 & n. 5, 96 S.Ct. at 1761 & n. 5, (ambiguities give police effective power to grant or deny permission to canvass for political causes); *M.S. News Co. v. Casado,* 721 F.2d 1281, 1290 (10th Cir.1983) (one of values offended by vague laws is that their imprecise standards permit arbitrary and discriminatory enforcement).

■ The trial judge believed that Golden's ordinance was sufficiently vague that it would be unconstitutional if the police were responsible for determining which organizations were eligible for exemptions. Trial Court op. at 4–5. However, he did not hold the ordinance invalid. In reaching this conclusion, the court apparently reasoned that the imprecision was acceptable because under the ordinance the city council, not the police, determine which organizations are entitled to exemptions. We must disagree.

We fail to see how it matters for First Amendment purposes whether unguided discretion is vested in the police or the city council. Vesting either authority with this discretion permits the government to control the viewpoints that will be expressed. Whether the city council or the police exercise this power, we believe that it runs afoul of the basic principle that "forbids the government from regulating speech in ways that favor some viewpoints or ideas at the expense of others." *Taxpayers for Vincent, supra,* —— U.S. at ——–——, 104 S.Ct. at 2128; *see also Troyer v. Town of Babylon,* 483 F.Supp. 1135, 1139 (E.D.N. Y.1980) (government has no power to restrict communication because of its content, subject matter or familiarity), *aff'd mem.,* 628 F.2d 1346 (2d Cir.), *summarily aff'd,* 449 U.S. 988, 101 S.Ct. 522, 66 L.Ed.2d 285 (1980).

■ In any event, a regulation of such activities cannot stand if it permits unguided discretion to be exercised in determining whether to grant or deny a permit or license which one must acquire before exercising First Amendment rights. Moreover, such a regulation is not saved by vesting such discretion in a governing administrative body instead of in police officers. For example, in *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958), the Court struck down an ordinance under which the Mayor and council of the city had the discretion to grant or deny a permit. *Id.* at 321, 78 S.Ct. at 281. The Court held that the ordinance on its face imposed an unconstitutional prior restraint because it authorized the Mayor and the Council to refuse or to grant a permit in their uncontrolled discretion. *Id.* at 325, 78 S.Ct. at 284.

Similarly, in *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 158–59, 89 S.Ct. 935, 938–939, 942–943, 22 L.Ed.2d 162 (1969), the Court refused to uphold a conviction for demonstrating without a permit because the City Commission had virtually unbridled discretion to grant or deny the permit. Other contexts in which the Supreme Court has discussed this principle also suggest that it should be applied to a city council. *See, e.g., Mun-*

son, supra, ── U.S. at ── n. 12, 104 S.Ct. at 2851 n. 12 ("Secretary of State"); *Schaumburg, supra,* 444 U.S. at 628–29, 100 S.Ct. at 831–832 ("public officials" and "state authority"); *Hynes, supra,* 425 U.S. at 617, 96 S.Ct. at 1759 ("municipal officials"); *see also Schaumburg, supra,* 444 U.S. at 640, 100 S.Ct. at 837 ("municipal authorities") (Rehnquist, J., dissenting).

■ We are convinced that Golden's ordinance cannot stand. It is not drawn with the requisite narrow specificity, and instead permits exemptions to be granted at the city council's discretion. The ordinance broadly prohibits soliciting, peddling and poll taking. Then only if the city council determines that such activity is for a "charitable, religious, patriotic or philanthropic purpose or otherwise provides a service or product so necessary for the general welfare of the residents of the city that such activity does not constitute a nuisance" will an individual or organization be granted an exemption. The parties have stipulated that "[n]o regulations or written interpretations of the Golden solicitation ordinances exist," and that "[n]o written instructions, orders, memoranda, or directions regarding the enforcement of the Golden solicitation ordinances exist." I R. 17. Thus the Golden council is given a broad discretion to permit or ban the exercise of protected activities.

■ We agree with the trial court that the definition of the types of organizations that the city council may determine are exempt is "certainly not specific." Trial Court op. at 4. "[T]he words 'charitable, religious, patriotic, or philanthropic' may be considered vague and indefinite," and the catch-all "or otherwise provides" clause "is uncertain in meaning." *Id.* at 5.[5] The ordinance does not sufficiently guide the city council. The record demonstrates that it is unclear whether an organization such as ACORN is even eligible for an exemption. *See* I R. 38, 58–60. In addition, the ordinance does not state that representatives of an organization must be present at a council meeting to receive an exemption, but the record reveals that the city council imposed such a requirement. III R. 76, 78, 80, 81; Brief of Defendants-Appellees.

The record is replete with evidence that exemptions are granted at the discretion of the city council, thereby giving that governing body the power to enforce the ordinance in a manner that favors some viewpoints over others. For example, an organization that sponsored a Christian Coffee House for teenagers was denied an exemption to distribute Christian literature, in its door-to-door solicitation. Apparently the city council simply felt that to permit this would be too great an invasion of residents' privacy. III R. 74. The Unification Church was denied an exemption on three occasions. On its third application, a representative of the Church was present and the record reveals that the city council discussed, among other things, an IRS investigation of the Church's tax exempt status, theology, the policy of not letting outside church groups solicit, and the constitutionality of denying the exemption to a religious group. The city council then denied the request.[6] III R. 80.[7] At the same time

---

5. We note that to the extent the vagueness of the ordinance permits the city council to grant or deny exemptions in its discretion, the ordinance is also unconstitutionally vague. One of the values offended by vague laws is that their lack of precise standards permits arbitrary and discriminatory enforcement. *E.g., M.S. News Co. v. Casado,* 721 F.2d 1281, 1290 (10th Cir.1983); *see also Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972). Thus, vagueness and discretion are related, and a law may suffer simultaneously from both defects.

6. The testimony of Charles Goudge, Golden's City Manager, II R. 34, demonstrates that the city council's decision to deny the Unifica-

Church's application for an exemption was discretionary. After plaintiffs' counsel asked Mr. Goudge why the city council denied the Unification Church's application, the following transpired.

　　A. As I recall, there was some concern as to whether that, and I am trying to recollect, there was some concern at one point whether they were—well, I probably will mistate it, but it was their financial situation or whether they were or were not a nonprofit, but, yes, they were *denied* on a couple of occasions, I might add.

such groups as UNICEF, the Lucky Patch 4–H Club, and the Guatemala Relief Fund were granted exemptions. III R. 85, 79, 78.

 The position that the City of Golden has taken on appeal confirms the breadth of discretion of the city council in granting exemptions. Golden argues that its ordinance is constitutional by noting that it does not absolutely prohibit solicitation as the ordinance in *Schaumburg* did. Rather the "determination is made on a *case by case* basis by the city council through the exemption process." Brief of Defendant-Appellees 11 (emphasis added). In this area of protected activity, such authority to grant an exemption on a "case-by-case" basis is precisely the sort of discretionary process that the Supreme Court has condemned. *See, e.g., Munson, supra,* —— U.S. at —— n. 12, 104 S.Ct. at 2851 n. 12 ("Our cases make clear that a statute that requires such a 'license' for the dissemination of ideas is inherently suspect. By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech.").

## III

### *Time, Place, and Manner*

 Golden's principal defense of the ordinance is that it is a reasonable time, place, and manner restriction, serving a legitimate governmental interest. *See* Brief of Defendants-Appellees 1, 7, 9. Golden further contends that the ordinance's prohibition is not absolute because even if ACORN does not obtain an exemption, it can still solicit if invited, or through the public forum. *Id.* at 8.[8] We are con-

vinced, however, that the ordinance cannot be upheld as a time, place, and manner regulation.

The Golden ordinance does not meet the requirements for a valid time, place, and manner regulation. Such regulations "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of information." *Clark v. Community for Creative Non-Violence,* —— U.S. ——, ——, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); *see also Regan v. Time, Inc.,* —— U.S. ——, ——, 104 S.Ct. 3262, 3265, 82 L.Ed.2d 487 (1984); *National Anti-Drug Coalition, Inc. v. Bolger,* 737 F.2d 717, 723 (7th Cir. 1984). Golden's ordinance, however, is not content neutral. The ordinance permits exemptions for organizations or individuals if the purpose of the solicitation is for a charitable, religious, patriotic or philanthropic purpose, or otherwise provides a service so necessary for the resident's general welfare that it does not constitute a nuisance. This approach contemplates a distinction based on content. Our case is thus similar to *Regan v. Time, Inc.,* —— U.S. ——, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). There, the Court held that the portion of the statute banning a photographic reproduction of currency unless it was "for philatelic, numismatic, educational, historical or newsworthy purposes" "could not be sustained as a valid time, place, and manner regulation because it discriminat[ed] on the basis of content." *Id.* at ——, ——, 104 S.Ct. at 3265, 3266. The Court reasoned that determining the newsworthiness or educational value of a photograph can only be based on

---

Q. And that's because these standards are discretionary with the City Council, isn't it?
A. They hear the evidence and make the decision.
II R. 42–43.

**7.** The Unification Church brought suit in federal district court. It sought declaratory and injunctive relief alleging that the ordinance was unconstitutional. III R. 87. This litigation was settled when the church and the City of Golden

agreed in a stipulation that "an exemption should have been awarded," III R. 88, and the Unification Church was permitted to proselytize or to solicit in the City of Golden.

**8.** We note in passing that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939).

its content and message. *Id.* at ——, 104 S.Ct. at 3265.

Similarly the city council's determination whether solicitation is for charitable, religious, patriotic or philanthropic purposes, or otherwise provides a service necessary to the general welfare of Golden's residents, clearly turns on the content of the message.[9] *See also Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, —— —— n. 18, 103 S.Ct. 2875, 2882 n. 18, 77 L.Ed.2d 469 (1983) (statute that prohibits mailing unsolicited advertisement of matter designed, adopted or intended for preventing conception cannot be justified as time, place, and manner regulation in light of its content-based prohibition). "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Regan, supra,* at ——, 104 S.Ct. at 3267; *see also Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980); *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–2290, 33 L.Ed.2d 212 (1972).

In sum, we hold that the City of Golden's ordinance cannot be sustained as a valid time, place, and manner regulation since it clearly is not content neutral.

## IV

### Conclusion

We must hold that the City of Golden's ordinances at issue are unconstitutional. They violate the First and Fourteenth Amendments because they empower the city council to grant exemptions in its discretion so as to control the exercise of First Amendment rights. Moreover the ordinances cannot be justified as time, place, and manner regulations because they are not content neutral. Accordingly the judgment is REVERSED and the case is REMANDED for further proceedings and judgment in accord with this opinion.

McWILLIAMS, Circuit Judge, dissents:

I am in accord with the views expressed by the District Judge and therefore dissent.

---

9. It also appears that making the distinctions envisioned by the ordinance would run afoul of the principle enunciated in *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed.2d 1213 (1940). In *Cantwell* the Court struck down a statute that empowered the secretary of the public welfare council of the state to determine if a cause was a religious one. If he determined that the cause was not religious, he was authorized to refuse to issue a certificate, and soliciting without a certificate was a crime. *Id.* at 305, 60 S.Ct. at 904; *see Schaumburg, supra,* 444 U.S. at 629, 100 S.Ct. at 832 ("Although *Cantwell* turned on the Free Exercise Clause, the Court has subsequently understood *Cantwell* to have implied that soliciting funds involves interests protected by the First Amendment's guarantee of freedom of speech."); *see also Espinosa v. Rusk, supra,* 634 F.2d 477. At least to the extent that the ordinance permits the City Council of Golden to determine whether an organization is religious for purposes of granting an exemption, it suffers from the same constitutional defect as that found in *Cantwell.*