767 F.2d 1248
 WISCONSIN ACTION COALITION, a charitable non-profit
Wisconsin corporation, and Charles Chapman,
Plaintiffs-Appellees,
v.
CITY OF KENOSHA, a municipal corporation of the State of
Wisconsin; and Joseph H. Trotta, Chief of Police of the
City of Kenosha; and their agents, employees, assistants,
successors, and all others acting in concert with them or
under their control, Defendants-Appellants.
 No. 84-2006.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 14, 1985.
Decided July 19, 1985.
 
 James W. Conway, City Atty., Kenosha, Wis., for plaintiffs-appellees.
 Thomas Asher, Shellow, Shellow & Glynn, Milwaukee, Wis., for defendants-appellants.
 Before BAUER, CUDAHY and FLAUM, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 We are faced in this appeal with the question whether an anti-solicitation ordinance as applied to door-to-door canvassing for charitable and political causes in residential areas between 8:00 p.m. and 9:00 p.m. violates the First Amendment. The district court granted a preliminary injunction preventing enforcement between 8:00 p.m. and 9:00 p.m., and then granted summary judgment for plaintiffs, issuing a permanent injunction invalidating the ordinance between those hours. The municipality appeals, but we affirm the actions of the district court.
 
 I.
 
 2
 Plaintiff Wisconsin Action Coalition (the "Coalition") is a charitable non-profit Wisconsin corporation. It is a coalition of some 155 union organizations, elderly-rights organizations, religious committees and organizations, community service groups and farmer associations throughout the State of Wisconsin. The Coalition's primary purpose is to serve as a statewide advocate of consumer rights and other public causes. In addition, the Coalition provides support for political candidates who have supported or will support strong consumer rights legislation. Plaintiff Charles Chapman is employed as Canvass Director for the Coalition, and had worked for a similar Iowa organization before becoming associated with the Coalition. Chapman supervises the canvassing of others and also canvasses himself. The Coalition employs canvassers who go door-to-door in a given community from 4:00 p.m. to 9:00 p.m., Monday through Friday, for the purpose of gaining political and financial support. Among the activities engaged in by the canvassers are speaking to residents on issues of concern to the Coalition, gathering signatures on petitions, soliciting membership dues and contributions and distributing literature.
 
 
 3
 On or about March 8, 1984, Coalition canvassers started going door-to-door in residential areas of Kenosha, Wisconsin (the "City" or "Kenosha"), to discuss consumer rights issues with residents and to explain the Coalition's position on these issues and their relationship to the then-upcoming mayoral election. Coalition canvassers wanted to canvass between 8:00 p.m. and 9:00 p.m., but were prohibited from doing so by a then-recently-enacted City ordinance. Section 13.025 of the Code of General Ordinances of the City of Kenosha (the "Ordinance") provides as follows:
 
 
 4
 CHARITABLE, RELIGIOUS AND POLITICAL SOLICITATIONS. It shall be unlawful for any person, firm or corporation to solicit or cause to be solicited contributions of money, goods or services to be utilized for a charitable, religious or political purpose in a residentially zoned area without a prearranged appointment during the hours of 8:00 P.M. to 8:00 A.M..
 
 
 5
 After the defendants indicated that they intended to enforce the Ordinance, the plaintiffs filed a civil action on March 12, 1984, in the district court. The complaint challenged the constitutionality of the Ordinance on First and Fourteenth Amendment grounds as applied to, and enforced during, the hour from 8:00 p.m. to 9:00 p.m. Plaintiffs sought a restraining order, preliminary and permanent injunctions and a declaratory judgment. Jurisdiction was invoked pursuant to 28 U.S.C. Sec. 1343; relief was claimed under 42 U.S.C. Sec. 1983, 28 U.S.C. Secs. 2201 & 2202 and the First and Fourteenth Amendments.
 
 
 6
 On March 23, 1984, the district court issued a preliminary injunction against enforcement of the Ordinance between 8:00 p.m. and 9:00 p.m. Both sides moved for summary judgment soon thereafter.
 
 
 7
 In support of their motion for summary judgment, the defendants submitted the affidavit of James W. Conway, the City Attorney. According to this affidavit, there is no written legislative history for the Ordinance, but the purpose of the Ordinance is
 
 
 8
 solely to protect the privacy of persons residing in residentially zoned areas of the City and to secure for said persons the peaceful enjoyment of their homes. Said Ordinance was not enacted as a crime prevention or control measure.
 
 
 9
 The affidavit further stated that the Ordinance does not
 
 
 10
 prevent social contacts without a prearranged appointment with persons living in residentially zoned areas of the City of Kenosha, even if the social call is made by a stranger and even if the purpose of the social call is to discuss matters such as politics or religion.
 
 
 11
 Finally, the affidavit stated that the City intended to prosecute violations of the Ordinance absent an injunction prohibiting its enforcement. This affidavit is the only evidence presented by the defendants in support of the Ordinance. As will become apparent, the City's failure to present any evidence other than this affidavit in support of the Ordinance severely impairs its position. Perhaps a stronger offer of evidence by the City would have produced a different result.
 
 
 12
 The plaintiffs submitted an affidavit by Mr. Chapman in support of their motion for summary judgment. Their affidavit stated that the Coalition usually sends out eight canvassers from 4:00 p.m. to 9:00 p.m., Monday through Friday; that many more people are at home from 6:00 p.m. to 9:00 p.m. than before 6:00 p.m.; and that Coalition canvassers receive about one-fourth of their total contributions between 8:00 p.m. and 9:00 p.m. See City Br. at ix.
 
 
 13
 The district court relied on the admitted allegations of the complaint and (apparently) on the affidavits. Neither party contends that there are any disputed issues of material fact.[1] City Br. at xi; Coalition Br. at 1, 4. Nor does either party contest the propriety of summary judgment. Rather, the defendants contest the principles of law applied by the district court, and, of course, that court's conclusion.
 
 
 14
 In its Decision and Order of June 5, 1984, the district court stated that it was undisputed that the plaintiffs' canvassing and soliciting activities were protected by the First Amendment, and that the Ordinance impaired the First Amendment rights of the plaintiffs who would otherwise be free to canvass until 9:00 p.m. It then applied the following standard:
 
 
 15
 When First Amendment interests are affected, an ordinance must be drawn with "narrow specificity." [Village of] Schaumburg [v. Citizens for a Better Environment, 444 U.S. 620] at 627 [100 S.Ct. 826 at 831, 63 L.Ed.2d 73] [1980]. Defendants must show that the ordinance relates with specificity to one or more legitimate governmental interests and does not intrude upon the rights of free speech. Citizens For A Better Environment v. The Village of Olympia, 511 F.Supp. 104 (N.D.Ill.1980).
 
 
 16
 Dist.Ct.Opin. at 2-3. The district court found that the restriction on canvassing after 8:00 p.m. was not sufficiently narrowly drawn,
 
 
 17
 not because 9:00 p.m. is a magically constitutional hour at which to prohibit soliciting, but because the defendants have failed to convince me that an 8:00 p.m. cutoff on solicitations is required to protect privacy and the peaceful enjoyment of the home.
 
 
 18
 Dist.Ct.Opin. at 3. The district court granted summary judgment for the plaintiffs, and issued a permanent injunction "invalidating the ordinance between 8:00 p.m. and 9:00 p.m." Dist.Ct.Opin. at 4.
 
 II.
 
 19
 In a line of cases running over some twenty-five years, the Supreme Court has granted substantial First Amendment protection to door-to-door canvassing and soliciting activities. E.g., Secretary of State v. Joseph H. Munson Co., --- U.S. ----, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("Munson"); Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ("Schaumburg"); Hynes v. Mayor of Oradell, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). It is beyond dispute that solicitation is a form of speech protected by the First Amendment. Munson, 104 S.Ct. at 2849; Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); Schaumburg, 444 U.S. at 632, 100 S.Ct. at 833; National Anti-Drug Coalition, Inc. v. Bolger, 737 F.2d 717, 720 (7th Cir.1984). Although the Court has at times criticized door-to-door solicitation, see Hynes, 425 U.S. at 619, 96 S.Ct. at 1760; Breard v. Alexandria, 341 U.S. 622, 639 & n. 27, 71 S.Ct. 920, 931 & n. 27, 95 L.Ed. 1233 (1951), it may be the case that door-to-door canvassing, distribution of literature and solicitation are entitled to special solicitude because they are less expensive means of communicating ideas than feasible alternatives and therefore important alternatives for many groups in our society. Association of Community Organizations for Reform Now v. Municipality of Golden, Colorado, 744 F.2d 739, 746 (10th Cir.1984); Pennsylvania Alliance for Jobs and Energy v. Council of Munhall, 743 F.2d 182, 194 (3d Cir.1984) (Becker, J., dissenting). See Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 2133 n. 30, 80 L.Ed.2d 772 (1984) (citing Martin v. Struthers, 319 U.S. 141, 146, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943)). See also Clark v. Community for Creative Non-Violence, --- U.S. ----, 104 S.Ct. 3065, 3079 n. 14, 82 L.Ed.2d 221 (Marshall, J. dissenting). Cf. Bolger, 737 F.2d at 728.
 
 
 20
 However, the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that one may desire. Heffron, 452 U.S. at 647, 101 S.Ct. at 2563; Adderley v. Florida, 385 U.S. 39, 47-48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966); Breard v. Alexandria, 341 U.S. at 642, 71 S.Ct. at 932; Bolger, 737 F.2d at 720. See United States v. Grace, 461 U.S. 171, 177-78, 103 S.Ct. 1702, 1706-07, 75 L.Ed.2d 726 (1983). A municipality has the power to regulate the activities of canvassers and solicitors if the regulation is in furtherance of a legitimate governmental objective. Heffron, 452 U.S. at 647-49, 101 S.Ct. at 2563-64; Schaumburg, 444 U.S. at 637, 100 S.Ct. at 836; Hynes, 425 U.S. at 616-17, 96 S.Ct. at 1758-59; Association of Community Organizations for Reform Now v. City of Frontenac, 714 F.2d 813, 816 (8th Cir.1983). Protection of the privacy of residents, which includes securing for them the peaceful enjoyment of their homes, is well established as a legitimate and obviously important governmental interest sufficient to support regulation of door-to-door solicitation and canvassing. Hynes, 425 U.S. at 618-19, 96 S.Ct. at 1759-60; Pennsylvania Alliance for Jobs and Energy v. Council of Munhall, 743 F.2d at 186-87; Association of Community Organizations for Reform Now v. City of Frontenac, 714 F.2d at 817; West Virginia Citizens Action Group, Inc. v. Daley, 324 S.E.2d 713, 718-19 (W.Va.1984).[2] We think that peace and quiet in the home in the evening is a significant and commendable municipal objective deserving of every protection by constitutional means. Indeed, the City's "interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." Carey v. Brown, 447 U.S. 455, 471, 100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980).
 
 
 21
 The issue before us is therefore whether the Ordinance is a limitation on the Coalition's activities drawn in accordance with the Constitution. When a statute infringes on the exercise of First Amendment rights, the burden of establishing its constitutionality is on its proponent. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); City of Frontenac, 714 F.2d at 817; Association of Community Organizations for Reform Now v. Municipality of Golden, Colorado, 744 F.2d at 746; Citizens for a Better Environment v. Village of Schaumburg, 590 F.2d 220, 224 (7th Cir.1978) ("Village of Schaumburg "), aff'd, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); New York Community Action Network, Inc. v. Town of Hempstead, 601 F.Supp. 1066, 1069 (E.D.N.Y.1984); Citizens for a Better Environment v. Village of Olympia Fields, 511 F.Supp. 104, 105-06 (N.D.Ill.1980). See Clark v. Community for Creative Non-Violence, --- U.S. ----, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221 (1984). Therefore, the City bears the burden of showing that the Ordinance is properly drawn. However, the appropriate standard by which to reconcile the City's legitimate interest in protecting the privacy of its residents and the Coalition's protected activity, and thereby to determine whether the Ordinance is a properly drawn time, place and manner restriction, is a matter of some dispute.
 
 
 22
 In Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), the Supreme Court said that "a direct and substantial limitation on protected activity ... cannot be sustained unless it serves a sufficiently strong, subordinating interest that the Village is entitled to protect." 444 U.S. at 636, 100 S.Ct. at 836. "The Village may serve its legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." 444 U.S. at 637, 100 S.Ct. at 836. The following Term, the Court stated that time, place and manner restrictions are reasonable " 'provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels for communication of the information.' " Heffron, 452 U.S. at 648, 101 S.Ct. at 2564 (quoting Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) ("Virginia Citizens" )). These two formulations, which may or may not be interchangeable, were repeated in four decisions in the 1983 Term.
 
 
 23
 In both Clark v. Community for Creative Non-Violence, --- U.S. ----, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), and Regan v. Time, Inc., --- U.S. ----, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984), the Court stated, slightly altering the Virginia Citizens formulation, that reasonable time, place and manner restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Clark, 104 S.Ct. at 3069. See Regan, 104 S.Ct. at 3266-67. In Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), the Court said that regulation is permissible if it is content neutral, and "necessary to advance a significant and legitimate state interest," 104 S.Ct. at 2128. If so, "the critical inquiries are whether that interest is sufficiently substantial to justify the effect of the ordinance on [the speaker's] expression, and whether that effect is no greater than necessary to accomplish the [government's] purpose." 104 S.Ct. at 2129. In particular, even where the effect on the advocate is only "incidental," the restriction must be "narrowly tailored" to serve the governmental interest. Id. at 2130.
 
 
 24
 In Secretary of State v. Joseph H. Munson Co., --- U.S. ----, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the Court, considering a question about solicitation regulation left open in Schaumburg, reaffirmed the statements in Schaumburg that a direct and substantial limitation on protected activity " 'cannot be sustained unless it serves a sufficiently strong, subordinating interest' " that the government is entitled to protect, and is a " 'narrowly drawn regulatio[n] designed to serve [the] interes[t] without unnecessarily interfering with First Amendment freedoms.' " 104 S.Ct. at 2849 (quoting Schaumburg, 444 U.S. at 636, 637, 100 S.Ct. at 836) (alterations in Munson ). Further, the Court stated that a regulation should be rejected if it is not a precisely tailored means of accommodating the asserted governmental interests. 104 S.Ct. at 2849. If the interest asserted "can be accommodated by measures less intrusive" than the challenged regulation, the regulation is insufficiently related to the interest to justify its interference with the protected speech. 104 S.Ct. at 2850.
 
 III.
 
 25
 Recent decisions of the courts of appeals evidence some disagreement about the proper standard for evaluating hour restrictions on door-to-door solicitation. In Association of Community Organizations for Reform Now v. City of Frontenac, 714 F.2d 813 (8th Cir.1983), an ordinance that prohibited charitable canvassing between 6:00 p.m. and 9:00 a.m. was struck down as unconstitutional. The Eighth Circuit applied the following test:
 
 
 26
 Since constitutional principles require that the regulation be narrowly drawn to further the legitimate governmental objective, the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms.
 
 
 27
 City of Frontenac, 714 F.2d at 818 (footnote omitted). The court found there were less restrictive means available, and reversed the district court. In doing so, it rejected the test used by the lower court:
 
 
 28
 The district court reasoned that since the regulation was content neutral, that since Frontenac had a legitimate interest in protecting its citizens' privacy and safety, and that since ACORN had ample alternative opportunities to contact the public, the ordinance was a permissible time, place, and manner regulation of ACORN's exercise of its first amendment rights.
 
 
 29
 714 F.2d at 816.
 
 
 30
 The Third Circuit took a different approach in Pennsylvania Alliance for Jobs and Energy v. Council of Munhall, 743 F.2d 182 (3d Cir.1984), in which four ordinances that prohibited door-to-door canvassing after 5:00 p.m. were upheld. The court addressed the relevant question as follows:
 
 
 31
 In Tacynec v. City of Philadelphia, 687 F.2d 793 (3d Cir.1982), this court considered the standard by which time, place, and manner restrictions of first amendment activities are to be measured. We concluded there that the Heffron "ample alternative channels of communication" standard applies, unless the regulation in question is content-based. Then the more stringent "least restrictive alternative" standard is appropriate because, as Judge Adams noted, of the special "danger to first amendment freedoms inherent in a content-based scheme of regulation."
 
 
 32
 743 F.2d at 185.
 
 
 33
 The Second Circuit has applied a least restrictive means test, New York City Unemployed & Welfare Council v. Brezenoff, 677 F.2d 232, 237-39 (2d Cir.1982), which is in accord with the Eighth Circuit's Frontenac standard. New York Community Action Network, Inc. v. Town of Hempstead, 601 F.Supp. 1066, 1070 (E.D.N.Y.1984). The Supreme Court of Appeals of West Virginia has considered the conflicting standards advanced in City of Frontenac and Council of Munhall, and has argued persuasively for the Eighth Circuit approach. West Virginia Citizens Action Group, Inc. v. Daley, 324 S.E.2d 713, 721-25 (W.Va.1984).
 
 
 34
 The Tenth Circuit has recently considered a challenge to a time, place and manner regulation. Association of Community Organizations for Reform Now v. Municipality of Golden, Colorado, 744 F.2d 739, 749 (10th Cir.1984). The court quoted the Clark formulation (see supra at 1253), but found that the ordinance before it was not content neutral, and thus the court was not required to elaborate on the proper interpretation of its formulation.
 
 IV.
 
 35
 As has been seen, the primary difference between the two standards is the inclusion in the Eighth Circuit's Frontenac formulation of a requirement that less restrictive means be considered in evaluating a particular time, place and manner regulation.[3] The City's failure here to present any evidence in support of the Ordinance requires that the Ordinance be struck down under either standard. See infra Part V. Although we need not conclusively choose between the two standards, we believe that the Eighth Circuit's Frontenac formulation is helpful in analyzing this sort of case. The West Virginia Supreme Court has observed that
 
 
 36
 the fatal flaw in the majority opinion in Pennsylvania Alliance is its exclusion from consideration of less restrictive alternatives for advancing the governmental interests served by the temporal regulation of door-to-door canvassing and solicitation activities. The first amendment requires precision in the regulation of the exercise of free speech rights. Whether explicitly or implicitly, less restrictive alternatives must be considered in order to determine whether the challenged regulation is sufficiently narrow so as not to prohibit that which should be protected..... The first amendment cannot exist in a vacuum, without reference to alternative mechanisms for advancing legitimate governmental interests which might impinge upon the exercise of fundamental freedoms of expression, association, assembly, and petition....
 
 
 37
 Daley, 324 S.E.2d at 724-25 (citations omitted).
 
 
 38
 The first reason that the Frontenac approach is helpful here is that Supreme Court precedent supports an analysis which considers less restrictive means. The Court has repeatedly said that the First Amendment requires precision in the regulation of the exercise of free speech rights. See Munson, 104 S.Ct. at 2849; Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 68-71, 101 S.Ct. 2176, 2182-84, 68 L.Ed.2d 671 (1981); Schaumburg, 444 U.S. at 637, 100 S.Ct. at 836. Obviously, if there exists a less restrictive method of furthering the legitimate governmental interest, the regulation in question is not as precise as it could be. The Court has also repeatedly stated that a regulation must be narrowly drawn, Taxpayers for Vincent, 104 S.Ct. at 2130; Regan, 104 S.Ct. at 3288 n. 27 (Brennan, J. dissenting); Clark, 104 S.Ct. at 3069; United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983); Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); Heffron, 452 U.S. at 658, 101 S.Ct. at 2569 (Brennan, J. dissenting); Schad, 452 U.S. at 68, 101 S.Ct. at 2182; Schaumburg, 444 U.S. at 637, 100 S.Ct. at 836; Hynes, 425 U.S. at 620, 96 S.Ct. at 1760; Grayned v. City of Rockford, 408 U.S. 104, 115-17, 92 S.Ct. 2294, 2302-04, 33 L.Ed.2d 222 (1972), and that the regulation must serve the governmental interest "without unnecessarily interfering" with the First Amendment activities, Munson, 104 S.Ct. at 2849; Heffron, 452 U.S. at 654, 101 S.Ct. at 2567; Schad, 452 U.S. at 70, 101 S.Ct. at 2183; Schaumburg, 444 U.S. at 637, 100 S.Ct. at 836; cf. Taxpayers for Vincent, 104 S.Ct. 2129 ("no greater [restriction] than essential"). If there is a less restrictive alternative to a challenged regulation, then the regulation appears to unnecessarily interfere with First Amendment activity and is not as narrowly drawn as it could be. Further, the Court has actually considered whether there were less restrictive means to protect the interest served by the challenged solicitation regulation. In Heffron the Court rejected the contention that the suggested less restrictive means were adequate, and upheld the regulation. 452 U.S. at 654, 101 S.Ct. at 2567. In Schaumburg, on the other hand, the Court found that the Village's interests could be protected by several less restrictive alternatives, and invalidated the regulation. 444 U.S. at 635-39, 100 S.Ct. at 835-37. Supreme Court precedent thus indicates that the possibility of less restrictive means of furthering the governmental interest should be considered.[4]
 
 
 39
 Second, consideration of less restrictive alternatives is consistent with our prior decisions. In National Anti-Drug Coalition, Inc. v. Bolger, 737 F.2d 717 (7th Cir.1984), we considered a challenge to a Postal Service regulation which prohibited solicitation on post office premises. We stated that "reasonable time, place and manner restrictions may be enforced in a public forum if they are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Bolger, 737 F.2d at 723. We went on to state that " '[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time.' " Id. (quoting Grayned v. City of Rockford, 408 U.S. at 116, 92 S.Ct. at 2303). We explicitly refused to decide whether the lobbies of post offices or the surrounding Postal Service-owned sidewalks were public forums, id., but determined that the regulation satisfied the tests that would be applicable if the property was a public forum, and therefore was a valid time, place and manner restriction. 737 F.2d at 723-28.
 
 
 40
 In Bolger we considered whether there were less restrictive means. In fact, we discussed the less restrictive regulation the Postal Service had actually tried and found wanting. 737 F.2d at 724-26. We also noted the administrative burden in trying to develop an individual plan for each of the 30,000 differently configured post offices across the country. Id. at 727 & n. 8. It was only by such consideration that we could determine that the regulation was necessary and had been drawn with specificity and was narrowly tailored. This approach accords with our analysis in Village of Schaumburg, 590 F.2d at 225-26, where we considered less restrictive alternatives to the Village's anti-solicitation ordinance in order to determine that it was not drawn narrowly enough.
 
 
 41
 This circuit has also employed a more stringent interpretation of the third prong of the test. In the Third Circuit it is sufficient that there merely be alternatives to the prohibited form of solicitation. See Council of Munhall, 743 F.2d at 187-88 (Saturday residential or shopping district solicitation and telephoning or mailing adequate alternatives to prohibited evening residential soliciting). In addition, it may not even be necessary to show that alternative means or times are adequate or ample, much less that they are effective or equivalent. Id. at 193 (Becker, J. dissenting). In our previous cases we have examined the asserted alternative methods of communication to determine if they were adequate and ample alternatives to the one prohibited. The burden of showing that they were has been on the government. For example, in Bolger we found the alternatives to the prohibited solicitation to be "more than ample." 737 F.2d at 728. The regulation did not prohibit conversation and distribution of free literature on postal property, and solicitation and sale of literature could take place on adjoining municipal sidewalks. Id. at 727-28. However, the mere existence of alternative methods of expression was not sufficient to validate the Village of Schaumburg's restriction. Village of Schaumburg, 590 F.2d at 224 ("The fact that CBE may use other methods, such as the mails, to contact Village citizens is not relevant to the First Amendment challenge."); Village of Olympia Fields, 511 F.Supp. at 106. See Virginia Citizens, 425 U.S. at 757 n. 15, 96 S.Ct. at 1823 n. 15; Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) ("one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place"). Therefore, the government should also show that the alternatives to the prohibited activities are ample and adequate.
 
 
 42
 Finally, this circuit has implied that the importance of the governmental interest may have some bearing on whether the regulation is narrow enough and the alternatives adequate. In Bolger we specifically distinguished the interest there at issue from the interest at issue in Schaumburg:
 
 
 43
 We note that the significant government interest of providing postal patrons throughout the United States, its territories and possessions, with prompt, reliable, and efficient postal service differs substantially from the government interest in Schaumburg v. Citizens for a Better Environment, of protecting citizens of a single village from fraud. In that case, the Village of Schaumburg passed an ordinance that required every charitable organization to prove that 75% of its proceeds were used for charitable purposes before it received a permit to solicit within the Village. The Court held that "[t]he Village's legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition of solicitation. Fraudulent misrepresentations can be prohibited and penal laws used to punish such conduct directly." 444 U.S. at 637, 100 S.Ct. at 836. In the instant case, the Postal Service must promulgate regulations of uniform application for the 30,000 unique postal stations throughout the United States, its territories and possessions, to effectively control "disruptions and hindrances to the conduct of postal business." 43 Fed.Reg. 38824 (1978). These postal "regulations cannot be made to depend on all the variations of climate, population, density, and other factors [including the physical layout of 30,000 postal stations] that may vary significantly within a distance of less than 100 miles." U.S. Postal Service v. Greenburgh Civic Assns., 453 U.S. at 133, 101 S.Ct. [2676] at 2687 [69 L.Ed.2d 517 (1981)].
 
 
 44
 Bolger, 737 F.2d at 727 n. 8 (alterations in Bolger ).
 
 
 45
 It appears to us that decisions of this circuit have employed a standard for evaluating time, place and manner restrictions on First Amendment activities which is similar to that used in the Eighth and Second Circuits. The government involved has been required to show that the restriction is content neutral and serves a significantly protectable and subordinating interest. It has shown that the restriction is narrowly tailored to serve the interest by demonstrating an actual connection between the restriction and the served interest and has also shown why less restrictive alternative limitations are not adequate to protect the interest. Finally, the government has shown that the channels of communication left open provide ample and adequate alternatives. See Bolger; Village of Schaumburg; Village of Olympia Fields.
 
 V.
 
 46
 We now turn to Kenosha's Ordinance. The City asserts that the Ordinance is designed to protect privacy and peaceful enjoyment of the home. However, the Ordinance does not in any way prohibit door-to-door canvassing or distribution of literature. It prohibits only solicitation of contributions at certain hours. But the City has presented no evidence that solicitation constitutes some exacerbated threat to privacy not posed by the door-to-door activities which are permitted. Cf. Bolger. Indeed, the City did not present any evidence at all that the Ordinance would further the City's legitimate interests in protecting privacy and peaceful enjoyment of the home.
 
 
 47
 Nor did the City present any evidence that the Ordinance would protect privacy more effectively than numerous less restrictive alternatives. The City might enforce its trespass laws against solicitors who enter or remain on private property after the owner has indicated the solicitor is not welcome. Any resident wishing to avoid solicitation could post a sign to that effect. These less restrictive alternatives have been noted with approval by the Supreme Court and several other courts. Munson, 104 S.Ct. at 2850 n. 10; Schaumburg, 444 U.S. at 638-39, 100 S.Ct. at 837; Martin v. Struthers, 319 U.S. at 148, 63 S.Ct. at 865; City of Frontenac, 714 F.2d at 819; Town of Hempstead, 601 F.Supp. at 1071; Village of Olympia Fields, 511 F.Supp. at 107; Daley, 324 S.E.2d at 721. It may be that as a factual matter no-solicitation signs, for example, are not effective in preventing unwanted intrusions. But the City has made no effort to establish such a fact. Nor has the City attempted to show that for some reason privacy must be specially protected--by the Ordinance--at 8:00 p.m., even though trespassing laws, signs and door-slamming are sufficient at 7:45 p.m. Therefore, the district court was correct to find that there was no issue of material fact concerning whether the 8:00 p.m. cutoff was required to protect privacy and peaceful enjoyment of the home.
 
 
 48
 Since the City has not shown the Ordinance to be necessary to furthering its legitimate interest, and the Ordinance restricts the protected activities of the Coalition, the Ordinance is invalid as applied between 8:00 p.m. and 9:00 p.m.
 
 
 49
 Because the City failed to present any evidence in support of the Ordinance (other than the affidavit on its purpose and interpretation), the Ordinance is invalid even under the less stringent Third Circuit standard. Under that test the City must still show that there are "ample alternative channels of communication." Council of Munhall, 743 F.2d at 193 (Becker, J. dissenting); see Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-955, 74 L.Ed.2d 794 (1983); Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977). But cf. Perry Education Association, 460 U.S. at 53, 103 S.Ct. at 959. The Coalition has presented an affidavit stating that one quarter of its contributions are received between 8:00 p.m. and 9:00 p.m. even though that hour represents only one fifth of the hours its canvassers are active. The Coalition has also drawn our attention to a Census Bureau report relied on by other courts which shows that a significantly higher percentage of adults are at home between 8:00 p.m. and 9:00 p.m. than during the daytime hours during which solicitation is permitted by the Ordinance. The City has presented no evidence that there are other hours where an equivalent percentage of adults are at home or during which solicitation would be roughly as productive. It may be that there are such hours. Perhaps due to local work shifts as many people are home from 3:00 p.m. to 4:00 p.m. as the Coalition claims are home from 8:00 p.m. to 9:00 p.m. If so, the City should have presented evidence to that effect. Since the City has presented no evidence that there are ample alternatives, and the Coalition has presented evidence that the alternatives are not equivalent, the Ordinance is invalid under this standard as well.
 
 
 50
 We realize, as the City argues, that this reasoning might apply just as well to the prohibition as enforced at 3:00 a.m. However, the Ordinance is only being challenged as applied between 8:00 p.m. and 9:00 p.m. Further, the fact that we see little difference between the hour starting at 7:00 p.m. and that starting at 8:00 p.m. does not suggest that there is no difference between the 8:00 p.m. hour and the 9:00 p.m. hour. Nor could one conclude, for that matter, that there was no difference between the 8:00 p.m. hour and the hour starting at two in the morning. A municipality's interest in protecting the peaceful enjoyment of the home may well be sufficiently great at 9:00 p.m., not to mention 3:00 a.m., to support the Ordinance as applied at those hours. See Council of Munhall, 743 F.2d at 191 (Becker, J. dissenting); Village of Olympia Fields, 511 F.Supp. at 107 n. 5. We have found no case where solicitors have sought to canvass after 9:00 p.m. or where a court has struck down a prohibition as applied after 9:00 p.m.[5] We note that both the State of Wisconsin's Department of Justice and the Illinois Municipal League have drafted model ordinances regulating door-to-door solicitation which permit solicitation until 9:00 p.m. on weekdays. Village of Olympia Fields, 511 F.Supp. at 108 n. 6. The district court here said that 9:00 p.m. is not a "magically constitutional hour at which to prohibit soliciting," Dist.Ct.Opin. at 3, but we recognize that the City's interest in protecting the privacy and peace of its residents increases (perhaps geometrically) with the lateness of the hour. It is not difficult to speculate that at some point it would support the Ordinance in the face of a challenge.
 
 
 51
 The City cites to us Westfall v. Board of Commissioners of Clayton County, 477 F.Supp. 862 (N.D.Ga.1979), and McMurdie v. Doutt, 468 F.Supp. 766 (N.D.Ohio 1979), which sustained the validity of restrictions limiting door-to-door solicitation to the hours from 8:00 a.m. to 6:00 p.m. These decisions were prior to Schaumburg, and have been severely criticized. City of Frontenac, 714 F.2d at 819 n. 10; Village of Olympia Fields, 511 F.Supp. at 107-08; Connecticut Citizens Action Group v. Town of Southington, 508 F.Supp. 43, 46 n. 2 (D.Conn.1980). We do not find them persuasive.[6]
 
 VI.
 
 52
 The City has not shown that any of the apparent less restrictive means would not adequately serve its legitimate interest in protecting the privacy of its residents and their peaceful enjoyment of their homes. Nor has the City presented any evidence that the hours in which solicitation is permitted are an ample and adequate alternative to the hour during which enforcement of the Ordinance is challenged. The Coalition has presented evidence that the alternative times are not ample and adequate. Therefore, under the well-established standard, the Ordinance is not a permissible time, place and manner regulation as enforced between 8:00 p.m. and 9:00 p.m. Indeed, because of the City's complete failure to present evidence (other than the affidavit) in support of the Ordinance, the Ordinance fails even under the less stringent standard exemplified by the Third Circuit's decision in Council of Munhall. For these reasons, the order of the district court is AFFIRMED.
 
 
 
 [1]
 However, the parties did, at least in the trial court, challenge the use of the affidavits. The City argued that Mr. Chapman's affidavit was based on experience in Iowa not on experience in Kenosha, and so was irrelevant to this case. The City also claimed the affidavit was too conclusory to be credible. City Br. at x. It is not clear whether the City challenges the use of the affidavit on appeal, compare City Br. at xi with City Reply Br. at 1-3, but none of the asserted grounds of challenge appears to be well taken. The Coalition challenged Mr. Conway's affidavit on the ground that it was not a competent source for determining legislative intent. The Coalition does not appear to assert this challenge on appeal, and because we conclude that even as supported by the affidavit the Ordinance is invalid, we need not consider this challenge
 
 
 [2]
 The prevention of crime is also a legitimate government interest which can sustain a properly drawn solicitation regulation. Hynes, 425 U.S. at 618-19, 96 S.Ct. at 1759-60; Council of Munhall, 743 F.2d at 187; City of Frontenac, 714 F.2d at 817; Daley, 324 S.E.2d at 718. However, Kenosha has stated that crime prevention is not one of the purposes of the Ordinance. Kenosha does claim that protection of residents from the fear of crime is one of the purposes of the Ordinance. City Br. at 10. We fail to see how this could be an independent interest which might be used to justify the Ordinance. Either these fears are justified or they are not. If they are justified, then the way to protect residents from them is by protecting residents from crime, both through the Ordinance and in other ways. But Kenosha denies that the Ordinance serves this purpose. If the fears are not justified, then they cannot independently support the Ordinance. "[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969); see Council of Munhall, 743 F.2d at 190 (Becker, J. dissenting). Of course, fear of crime, whether justified or not, may well be a reason residents have for valuing privacy and the peaceful enjoyment of the home, and Kenosha's stated interest in protecting its citizens from the fear of crime is for that reason subsumed in its legitimate interest in protecting its citizens' privacy and peaceful enjoyment of the home. Therefore, we need not discuss this interest further
 
 
 [3]
 It is important to distinguish "less restrictive means" (or equivalently "less restrictive alternatives") from "ample alternative channels." The former denotes an inquiry into whether there are other regulations which are less restrictive of protected activity but protect the governmental interest served by the challenged regulation. The "ample alternative channels" inquiry focuses on methods of communication and asks whether those methods not prohibited by the challenged regulation are equivalent to the prohibited methods
 
 
 [4]
 We are aware of Justice White's statement that "[t]he less-restrictive-alternative analysis ... has never been a part of the inquiry into the validity of a time, place, and manner regulation," Regan, 104 S.Ct. at 3271-72, but note that a majority of the Court did not join this statement. We also note that the statement came in the context of a discussion of whether the governmental interest in preventing counterfeiting supported restrictions on same-size color reproductions of United States currency. That may well be a special case
 
 
 [5]
 In Pennsylvania Public Interest Coalition v. York Township, 569 F.Supp. 1398 (M.D.Penn.1983), plaintiffs challenged enforcement of an anti-solicitation ordinance between 6:00 p.m. and 9:00 p.m. The court enjoined enforcement at any hour because of the municipality's unwillingness to compromise. 569 F.Supp. at 1403. It is unclear what force York Township has after Council of Munhall
 In Connecticut Citizens Action Group v. Town of Southington, 508 F.Supp. 43 (D.Conn.1980), the ordinance prohibited solicitation after 6:00 p.m., but allowed ice cream vendors to ply their route until 10:00 p.m. on summer nights. The court enjoined enforcement "in such manner as unduly to limit" plaintiff's solicitation, 508 F.Supp. at 47, perhaps thereby indicating a 10:00 p.m. cut-off for all would have been acceptable. In Daley the West Virginia Supreme Court indicated that an ordinance must permit "some evening activity during the week," 324 S.E.2d at 726, and elsewhere in the opinion cited statistics about the percentages of people at home for hours through 10:00 p.m. But in neither of these cases was a challenge made that turned on application of the ordinance at some hour after 9:00 p.m.
 
 
 [6]
 Westfall relies on weekend and at work solicitation as adequate alternatives for reaching those not home during the limited weekday hours solicitation is permitted. 477 F.Supp. at 865. We have discussed this point supra at 1258. In McMurdie there is no analysis at all of the principles applicable to the hour restriction. 468 F.Supp. at 776. Nevertheless it is interesting to note that the municipality presented extensive evidence of harassment in support of its denial of a license to the plaintiff-solicitors which might well have supported a properly tailored regulation. Id. at 772-75