**Charles GREEN and National People's Action, Plaintiffs,**

**v.**

**The VILLAGE OF SCHAUMBURG, Dirk Christianson, and Kenneth R. Alley, Defendants.**

**No. 87 C 10046.**

United States District Court, N.D. Illinois, E.D.

Jan. 12, 1988.

Edward A. Voci, Chicago, Ill., for plaintiffs.

Jack M. Siegel, Siegel & Warnock, Gregory E. Rogus, Anne Lorenz, Leroy A. Garr & Associates, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This 42 U.S.C. § 1983 suit for injunctive relief and damages is before the court on plaintiffs' motion for a preliminary injunction. Having heard and considered the evidence and arguments of counsel at a hearing on November 24 and 25, 1987, this court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. National People's Action ("NPA") is an Illinois not-for-profit corporation composed of individuals, churches, and various public interest groups. Its members and employees canvass residential neighborhoods to distribute written information, solicit funds, and obtain signatures on petitions. NPA solicitors receive a basic salary plus an additional 40% of receipts above a certain quota.

2. Charles Green has been an NPA solicitor since October, 1987. He was convicted of a felony in Alaska in 1977 and two felonies in Illinois in 1983 (attempted armed robbery and illegal use of weapons). He was confined for approximately three years at Vandalia State Prison. Following his release, he worked for several social activist organizations and as a door-to-door salesman.

3. The Village of Schaumburg is an Illinois municipal corporation. Dirk Christianson is a detective with the Schaumburg police department, and Kenneth Alley is Chief of Police.

4. Article III of Chapter 22 of the Schaumburg Village Code regulates the solicitation of charitable organizations. NPA

**872**

is a charitable organization within the meaning of Article III.

5. Section 22–20 of Article III requires every charitable organization seeking to raise money through door-to-door solicitation to apply for a permit. Sections 22–24 and 22–25, respectively, make it unlawful for charitable organizations to use convicted felons as solicitors and to solicit homes posting a "no solicitation" sign.

6. In September, 1987, NPA requested a copy of Schaumburg's solicitation ordinance and an application for solicitation permits. Plaintiffs' preliminary exhibit ("PPX") 2. Plaintiffs were then notified that the president and board of trustees of Schaumburg had voted to approve such solicitation. PPX 3.

7. Subsequently, NPA submitted to the Clerk of the Village of Schaumburg a list of people who would be soliciting. Charles Green's name was not on this list.

8. The list was updated by telephone on or about November 4, 1987, and Charles Green's name was included. Solicitation permits were prepared and dated on November 9.

9. On November 10, Charles Green and another NPA member went to the office of the Village Clerk with a written list of all solicitors, their dates of birth, social security numbers, drivers' license numbers, and physical descriptions. PPX 1. Green received his permit at that time. *See* PPX 10.

10. Green was canvassing in Schaumburg on the evening of November 18. At approximately 7:20 p.m., he rang defendant Christianson's doorbell. Christianson stated that he was not interested. Green tried to get Christianson to listen, but when the latter was unpersuaded, Green left. At all times, Christianson had a no solicitation sign on his door.

11. After Green left, Christianson finished his dinner and resumed his duties as a detective. He got into an unmarked squad car and upon finding Green nearby, asked to see identification and his solicitor's permit. Christianson ran a radio check and learned that there was an outstanding arrest warrant against Green for a traffic violation. Green was then taken to the Schaumburg police department in a marked squad car.

12. At the police station, Green told Christianson of two of his felony convictions and his incarceration. Christianson then ran another check on Green's background and learned of his other conviction. Defendants' Exhibit ("DX") 1. Christianson then confiscated Green's solicitor's permit.

13. Burglaries and thefts comprise a significant number of the crimes committed in Schaumburg, and their incidence is steadily increasing. They are often committed by people who live outside the Village and who have an opportunity to observe the targeted homes and their surroundings. There is no evidence, however, linking such crimes to door-to-door solicitors.

### CONCLUSIONS OF LAW.

1. A motion for a preliminary injunction should be granted if plaintiffs demonstrate that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not issued; (3) the irreparable harm they will suffer if the injunction is denied outweighs the irreparable harm the defendants will suffer if the injunction is granted; (4) they have a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest. *Baja Contractors, Inc. v. The City of Chicago,* 830 F.2d 667, 675 (1987). Because showing a reasonable likelihood of success is most important, this court will discuss that factor first. *Id.*

2. Door-to-door solicitation clearly is entitled to First Amendment protection. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980). In fact, it may enjoy special solicitude because it is a relatively cheap method of communication. *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248, 1251 (7th Cir.1985).

■ 3. It also is clear, however, that municipalities may regulate solicitation if the regulation is substantially related to a legitimate government objective. *Village of Schaumburg, supra,* 444 U.S. at 636–39, 100 S.Ct. at 835–37; *Wisconsin Action Coalition, supra* at 1251. The prevention of crime is such an objective. *City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547, 1551 (7th Cir.1986); *aff'd,* — U.S. ——, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

4. The precise meaning of the "substantial relation" test is a subject which has occupied a good part of the Seventh Circuit's time. *See id.* at 1551–54; *Wisconsin Action Coalition, supra* at 1252–57. That court's decisions inform the result here, for they repeatedly employ a least restrictive means analysis. *City of Watseka, supra* at 1553–54; *Wisconsin Action Coalition, supra* at 1254–57. The least restrictive means test requires the Village to show "an actual connection between the restriction and the served interest" and the absence of "alternative limitations" which would further the interest at lesser cost to First Amendment rights. *Id.* at 1257.

5. Schaumburg argues that a least restrictive means test is inappropriate because door-to-door canvassing of private homes does not involve a public forum. *See Pennsylvania Alliance for Jobs and Energy v. Council of Munhall,* 743 F.2d 182, 186–87 (3d Cir.1984). The Seventh Circuit, however, has consistently rejected the *Pennsylvania Alliance* court's analysis. *City of Watseka, supra* at 1551–54; *Wisconsin Action Coalition, supra.* Moreover, as the *City of Watseka* court noted, *supra* at 1553–54, the Supreme Court uses a least restrictive means test in solicitation cases, even if it does so implicitly. Accordingly, this court must do the same.

■ 6. The evidence adduced at the preliminary injunction hearing demonstrates that there is no substantial relation between § 22–24 of the Schaumburg Vil-

lage Code and public safety. The ordinance prohibits any felon from soliciting, regardless of the type or age of crime for which he was convicted. Schaumburg easily could have lifted the prohibition for persons guilty of crimes relating to political protests, nonviolent crimes, or crimes committed more than five or ten years ago, but did not do so. All of these alternatives are less restrictive than § 22–24, and the Village did not demonstrate that they were inadequate to protect Schaumburg residents. Schaumburg's evidence showed a high degree of recidivism among felons within three years of their release from prison, but made no prediction with respect to felons who passed the three-year mark.

■ 7. The court notes that Green, who finished serving a sentence for armed robbery in 1985, might be precluded from soliciting even under a constitutional statute. There is another plaintiff in this case, however, and either one is entitled to attack an overbroad statute which would affect other persons not presently before this court. *See* Rotunda, Nowak and Young, *Treatise on Constitutional Law: Substance and Procedure* § 20.8 at p. 24 (1986). Accordingly, plaintiffs have a reasonable likelihood of showing that § 22–24 of the Schaumburg Village Code is unconstitutional.[1]

8. Other factors favor the granting of an injunction as well. The public interest supports strong protection of constitutional rights and First Amendment rights in particular. Given the weak, albeit rational, relation between § 22–24 and the safety of the citizens of Schaumburg, the balance of harms tips in favor of plaintiffs. Finally, because it is difficult to estimate damages resulting from the denial of a constitutional right, plaintiffs' harms are irreparable.

9. Defendants Alley and Christianson argue that they are entitled to a qualified immunity defense, *see Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982), and it does appear to this court that the Schaumburg police acted

---

1. The Supreme Court has remarked that prohibiting organizations from using convicted felons as door-to-door solicitors "may bear some relation to public safety." *Schaumburg v. Citizens* *for a Better Environment, supra,* 444 U.S. at 638, 100 S.Ct. at 837. That statement is dicta, however, both on its face and because the court did not decide the constitutionality of the provision.

competently. Having found that plaintiffs are likely to prevail against the Village, however, this court need not evaluate their claims against Alley and Christianson. The Village of Schaumburg and its officers are hereby enjoined from enforcing § 22–24 of the Village Code.

10. This court declines to order Village officials to return Green's solicitor's pass. According to the facts presented to this court, Green is a professional fundraiser who has not registered with the Illinois Attorney General, contrary to Ill.Rev.Stat. ch. 23, ¶¶ 5101(d), 5102, and 5106(a) (1968). The evidence before the court is too insufficient to permit a determination on this issue, *see* Ill.Rev.Stat. ch. 23 ¶ 5103 (1987) (listing exemptions), but sufficient enough to preclude this court from entering an order that may be inappropriate. Accordingly, plaintiffs are not entitled to an order requiring Green's solicitor's pass to be returned.

### CONCLUSION

Plaintiffs' motion for a preliminary injunction is granted in part and denied in part as follows: the Village of Schaumburg and its officers are enjoined from enforcing § 22–24 of the Village Code in its present form, but they are not required to return Charles Green's solicitor's pass.